Sandy DEW, Individually and as Representative of the Estate of Paul Dew, Deceased, and Carl Dew and Doris Dew, Petitioners,

v.

CROWN DERRICK ERECTORS, INC., Respondent.

No. 03–1128.

Supreme Court of Texas.

Argued Jan. 4, 2005.

Decided June 30, 2006.

Richard P. Hogan, Jr., Jennifer Bruch Hogan, Pillsbury Winthrop Shaw Pittman, L.L.P., Peter M. Kelly, Moore & Kelly, P.C., Nick C. Nichols, Richard J. Plezia, Abraham Watkins Nichols Sorrels Matthew & Friend, Houston, William Powers, Jr., The University of Texas School of Law, Austin, Gilbert I. "Buddy" low, Orgain Bell & Tucker, L.L.P., Beaumont, for petitioners.

David W. Holman, The Holman Law Firm, P.C., Robert Alan York, Godwin Gruber, LLP, Willie Ben Daw, III, Kyle Douglas Giacco,Daw & Ray, P.C., Houston, for respondent.

Justice MEDINA delivered a plurality opinion, joined by Chief Justice JEFFERSON, Justice O'NEILL, and Justice WAINWRIGHT.

The issue in this wrongful death and survival action is whether the trial court erred in refusing to submit an inferential rebuttal instruction on "new and independent cause." A divided court of appeals reversed and remanded for new trial, concluding that the trial court had erred in failing to submit a new and independent cause instruction because the evidence raised the issue. 117 S.W.3d 526, 537. We do not agree that the evidence in this case required the submission of this additional instruction, therefore we reverse the court of appeals' judgment and remand for that court to consider the other issues raised in the appeal.[1]

I

Paul Dew fell to his death through an opening in an oil derrick platform. The derrick was under construction at the time of the accident, and the key dispute at trial concerned who was responsible for the inadequately protected hole left in the platform. The jury concluded that the derrick's owner, Rowan Companies, Inc., its designer, Woolslayer Companies, Inc., and its erector, Crown Derrick Erectors, Inc., were all responsible and apportioned fault among them.

The derrick is known as the Gorilla V, a multi-tiered offshore drilling rig designed by Woolslayer for use in the North Sea. It has working platforms set at varying heights, including a fourble[2] platform set approximately eighty-eight feet up the derrick. Two openings in this platform allow for ladders that are required for such rigs. Woolslayer's design required safety gates to be erected around the ladder openings to prevent a person from falling through the opening.

Rowan hired Crown Derrick to erect the Gorilla V derrick from parts manufactured and supplied by Woolslayer, and construction began in March 1998. While assembling the ladders, Crown Derrick discovered that it did not have some of the necessary parts for installing the safety gates around one of the ladder openings in the fourble platform. Rowan's construction manager was told about the missing parts, and he notified Woolslayer.

By August 1998, Crown Derrick had virtually completed assembly of the derrick, but was still missing some parts for one of the safety gates. Crown Derrick left the job site on August 28 without having installed the safety gates around one opening on the fourble platform and the ladder for that opening. Before leaving, Crown Derrick placed two ropes around the otherwise unprotected and obviously dangerous opening. The ropes were tied across the platform's railing as a means to block the walkway and prevent a worker from simply walking into the opening unaware.

On September 22, 1998, Crown Derrick returned to complete its work, but a crane

---

1. Having found error in the court's charge, the court of appeals did not consider Crown Derrick's other issues concerning the sufficiency of the evidence and the computation of the judgment under Chapter 33 of the Civil Practices and Remedies Code.

2. "A stand of drill pipe consisting of four lengths." WEBSTER'S NEW INTERNATIONAL DICTIONARY 997 (2d ed. unabridged 1954).

it needed to install the ladder was not working. Crown Derrick also asserts that it still did not have some parts for the safety gates and so nothing was accomplished that day. Apparently, no one with Crown Derrick ascended to the fourble platform to inspect the condition of the double-rope barricade it had left the month before to secure the opening. The next day, Paul Dew, an employee of one of Rowan's associated companies, was working on this platform and fell through the opening to his death.

The double-rope barricade was not maintained while Crown Derrick was away from the work site. At some point, an electrical junction box may have been used to cover the opening, and still later, a single-rope was used to guard the opening. No one actually witnessed the accident, and a dispute exists whether even the single-rope barricade was in place on the day Mr. Dew fell.

After the accident, Paul Dew's wife and parents sued Rowan, Woolslayer, and Crown Derrick. Their wrongful death and survival action was tried to a jury which found that the negligence of all three defendants contributed to cause Mr. Dew's death. The jury also awarded damages, apportioning responsibility as follows:

| | |
|---|---|
| ROWAN COMPANIES, INC. | 47% |
| WOOLSLAYER COMPANIES, INC. | 30% |
| CROWN DERRICK ERECTORS | 20% |
| PAUL DEW | 3% |
| TOTAL | 100% |

The trial court rendered judgment on the verdict.

Only Crown Derrick appealed, complaining among other things that the trial court had erred in refusing to submit a jury instruction on new and independent cause. Agreeing that this instruction was necessary and its omission harmful, the court of appeals reversed the judgment against Crown Derrick and remanded the Dews' claims against it for a new trial. The court concluded that an instruction was needed because a fact question existed as to "whether any intervening act occurred, and was an unforeseeable new and independent cause." 117 S.W.3d at 537. One justice dissented, questioning whether there was any evidence upon which a reasonable jury could conclude that the intervening acts were unforeseeable, but also questioning whether any subsequent forces intervened to alter the consequences of Crown Derrick's original negligence. *See* 117 S.W.3d at 537 (Burgess, J. dissenting).

## II

A new and independent cause is one that intervenes between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause. *Robert R. Walker, Inc. v. Burgdorf,* 150 Tex. 603, 244 S.W.2d 506, 509 (1951); *Phoenix Ref. Co. v. Tips,* 125 Tex. 69, 81 S.W.2d 60, 61 (1935). An intervening cause thus supersedes the defendant's negligence by destroying the causal connection between that negligence and the plaintiff's injury thereby relieving that defendant of liability. *See generally* 1 JAMES B. SALES AND J. HADLEY EDGAR, TEXAS TORTS AND REMEDIES § 1.04[4] (2005). It is one of a number of inferential rebuttal defenses that "operates to rebut an essential element of the plaintiff's case by proof of other facts." *Dillard v. Tex. Elec. Coop.,* 157 S.W.3d 429, 430 (Tex.2005); *see also* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 3.1–3.5 (2003) (inferential rebuttal instructions). The instruction's purpose is "to advise the jurors, in the appropriate case, that they do not have to place blame on a [particular defendant] to the suit" if the true cause for the accident lies elsewhere. *Dillard,* 157 S.W.3d at 432 (citing *Rein-*

*hart v. Young,* 906 S.W.2d 471, 472 (Tex. 1995)). The instruction is necessary when the evidence in the case raises a fact issue on new and independent cause. *Dallas Ry. & Terminal Co. v. Bailey,* 151 Tex. 359, 250 S.W.2d 379, 384 (1952); *Young v. Massey,* 128 Tex. 638, 101 S.W.2d 809, 810 (1937).

As in the court below, the parties here generally disagree about whether evidence supports the submission of this inferential rebuttal instruction. Specifically, they disagree about whether Rowan's or someone else's act in altering or removing the ropes was foreseeable and an intervening act that should supersede Crown Derrick's own negligence.

"Generally speaking, if the intervening force was foreseeable at the time of the defendant's negligence, the force is considered to be a 'concurring cause' of the plaintiff's injuries," and "the defendant remains liable for the original negligence." SALES AND EDGAR § 1.04[4][b] at 1–55; *see also J. Wigglesworth Co. v. Peeples,* 985 S.W.2d 659, 665 (Tex.App.-Fort Worth 1999, pet. denied) ("if an intervening cause was reasonably foreseeable by the defendant in the exercise of ordinary care, it cannot be considered a new and independent cause"). If, on the other hand, "the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act." *Derdiarian v. Felix Contracting Corp.,* 51

N.Y.2d 308, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (1980). What generally distinguishes a superseding cause from one that merely concurs in the injury is that the intervening force was not only unforeseeable, but its consequences also unexpected:

> [A] superseding cause is one that alters the natural sequence of events and produces results that would not otherwise have occurred. Or one that is "of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant." An intervening force will not break a causal connection if that force was itself probable or foreseeable by the original wrongdoer. It must be one not brought into operation by the original wrongful act and must operate entirely independently of such original act.

1 J.D. LEE & BARRY A. LINDAHL, MODERN TORT LAW § 4:7 at 4–14—4–15 (2d ed.2002) (footnotes and citations omitted).

We have relied on the Restatement in the past to aid us in determining when an intervening force rises to the level of a new and independent or superseding cause. *See Phan Son Van v. Pena,* 990 S.W.2d 751, 754 (Tex.1999); *Humble Oil & Ref. Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex. 1968). The Restatement, which itemizes six factors as useful when making this determination,[3] generally parses the core

---

3. The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

    (a) the fact that [the intervening force] brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

    (b) the fact that [the intervening force's] operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of [the force's] operation;

    (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

principles already discussed—that a superseding cause ordinarily involves the intervention of an unforeseen, independent force from a third party, causing injury different from that which might have been expected at the time of the original negligent act. *See* RESTATEMENT (SECOND) OF TORTS § 442(a)-(d) (1965). The Restatement also lists considerations that are not relevant to our present circumstances, such as whether the intervening act was intentional or criminal. *See id.* § 442(e)-(f). But as our case law and the Restatement make clear, the threshold, and often controlling, inquiry when distinguishing between a concurring and a superseding cause remains "whether the intervening cause and its probable consequences were such as could reasonably have been anticipated by the original wrongdoer." *Bell v. Campbell,* 434 S.W.2d 117, 120 (Tex.1968).

### III

▪▪▪ The Dews argue that, given the insubstantial nature of Crown Derrick's

rope barricade, it was inevitable that it would be altered. They submit that Crown Derrick should have protected the opening with a fixed, static barrier instead that could not so easily be altered or removed. Crown Derrick's failure to do this, the Dews submit, was negligence that combined with others' foreseeable negligence to cause this accident. Thus, because the accident was a foreseeable consequence of the creation of a dangerous hole which Crown Derrick failed adequately to safeguard, the Dews conclude that the intervening acts cannot be considered new and independent.[4]

Crown Derrick, on the other hand, maintains that it was entitled to an instruction on new and independent cause because the possibility that someone would alter or remove its barricade was not foreseeable, and the barricade was a safety precaution that Crown Derrick suggests was completely adequate to protect others from the dangerous opening. Crown Derrick thus

---

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

RESTATEMENT (SECOND) OF TORTS § 442 (1965).

**4.** The Dews further argue that, even though they should prevail under a traditional proximate cause analysis, Texas jurisprudence would be better served by replacing that analysis with the "scope-of-liability" principles espoused by the American Law Institute in the tentative draft of the Third Restatement of Torts. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM (BASIC PRINCIPLES) § 29 (Tentative Draft No. 3, 2003) ("An actor is not liable for harm different from the harms whose risks made the actor's conduct tortious."). This tentative draft suggests that the term "proximate cause" has proven a poor

choice for describing the limits of liability because it "implies that there is but one cause—the cause nearest in time or geography to the plaintiff's harm—and that factual causation bears on the issue of scope of liability." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM (BASIC PRINCIPLES) § 29, cmt. b (Tentative Draft No. 3, 2003). Because neither implication is correct, the draft suggests that the term "proximate cause" and the accompanying instructions typically used to define the term be abandoned; that its component elements of cause in fact and foreseeability be considered separately; and that legal cause hereafter be defined in terms of the "scope of liability" which is meant to convey "the idea that an actor should be held liable only for harm that was among the potential harms—the risks—that made the actor's conduct tortious." *Id.* cmt. b & d. While we applaud any effort to bring greater clarity to this difficult area of the law, we must decline the invitation to abandon decades of case law, not to mention the Restatement (Second) of Torts, before even the American Law Institute has done so.

views the alteration or removal of its rope barrier, without an adequate replacement, as an extraordinary and unexpected occurrence, and therefore some evidence of a new and independent cause.

Crown Derrick's argument, however, is premised on an erroneous assumption—that its double rope barricade was an adequate safeguard.[5] Were this true, Crown Derrick would not have needed an instruction on new and independent cause because it would not have been negligent in the first place. The jury obviously did not view the double-rope barricade as an adequate precaution against the hazard left by Crown Derrick, probably because the ropes could so easily be altered or removed. Its verdict indicates that Crown Derrick breached its duty of ordinary care by leaving an open hole in the platform without adequate safeguards.

Any intervening acts which exploited this inadequacy did not fundamentally alter the foreseeable consequences of Crown Derrick's original negligence. *See Tex–Jersey Oil Corp. v. Beck,* 157 Tex. 541, 305 S.W.2d 162, 166 (1957) (bolt of lightning that ignited vapors defendant negligently permitted to escape from tank not new and independent cause). As one authority has observed:

> Obviously the defendant cannot be relieved from liability by the fact that the risk, or a substantial and important part of the risk, to which the defendant has subjected the plaintiff has indeed come to pass. Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The courts are quite generally agreed that intervening causes which fall fairly in this category will not supersede the defendant's responsibility.

KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, § 44, at 303 (5th ed.1984). Where the intervening act's risk is the very same risk that renders the original actor negligent, the intervening act cannot serve as a superseding cause. *See Tex–Jersey Oil Corp.,* 305 S.W.2d at 166; *Derdiarian,* 434 N.Y.S.2d 166, 414 N.E.2d at 671; RESTATEMENT (SECOND) OF TORTS § 442 B (Intervening Force Causing Same Harm as That Risked by Actor's Conduct).[6] Because these are our present circumstances, Crown Derrick was not entitled to an instruction on new and independent cause.

The court of appeals' judgment is reversed and the cause is remanded for consideration of other issues raised, but not considered, in that court.

Justice BRISTER filed a concurring opinion, joined by Justice WILLETT.

Justice JOHNSON filed a dissenting opinion, joined by Justice HECHT and Justice GREEN.

Justice BRISTER, joined by Justice WILLETT, concurring.

Only last year, we rejected the tradition of reversing jury verdicts based on inferential-rebuttal instructions that could have

---

5. Crown Derrick argues that it was entitled to an instruction on new and independent cause because "the evidence raises the question of whether Paul Dew's accident was caused by the *properly barricaded* ladder opening left by Crown Derrick, or by the *improperly barricaded* ladder opening that came into being as the result of intentional actions by other parties after Crown Derrick left the worksite." (emphasis added).

6. "Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct."

made no difference to a jury. Because that rule applies here, I concur in the Court's judgment.

The Court splits today over whether the evidence establishes a superseding or merely intervening cause, applying the broad and rather amorphous factors of section 442 of the Restatement of Torts. But section 442 is not about jury instructions; it is about the much more philosophical question of what constitutes "legal cause." *See* RESTATEMENT (SECOND) TORTS § 441.

The question here is much simpler: did omission of an inferential-rebuttal instruction probably cause an improper judgment? *See* TEX. R. APP. P. 61.1(a). As we held last year in *Dillard v. Texas Electric Co-operative*, the purpose of such instructions is to advise jurors "that they do not have to place blame on a party to the suit." 157 S.W.3d 429, 432 (Tex.2005). As we noted then, it is hard to see any harm in instructing jurors that a broad-form question asking *whose* negligence caused an occurrence is not meant to imply that *someone's* must have. *Id.* at 433; *see also Louisiana–Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex.1998) (per curiam) ("If an instruction *might* aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper.") (emphasis added).

But if the right inferential-rebuttal instruction is refused, *Dillard* rejected a rule of automatic reversal. That was what the court of appeals did after concluding that a cow in the road was some evidence that a nonparty caused the accident. *See* 171 S.W.3d 196 (Tex.App.—Tyler 2003). This Court unanimously took a broader view, noting that while the charge's unavoidable-accident instruction was technically incor-

rect, it still allowed jurors to blame the cow. As we stated then, "rather than focus on whether or not there was evidence to support each of [the] proposed inferential rebuttal defenses, we think it more appropriate to examine the adequacy of the charge that was given." *Dillard,* 157 S.W.3d at 432.[1]

Here, Crown Derrick's theory—that the accident was someone else's fault—was adequately presented in the comparative negligence portion of the charge. In closing argument, Crown Derrick's attorney argued that "Rowan took down our rope" and "How can we be the proximate cause when the controllers of this area [Rowan] made a conscious decision not to do anything about a hazard they knew about?" Moreover, this argument was largely effective, as the jury assessed 80% of the fault for the accident to someone other than Crown Derrick. Other than omitting Crown Derrick from the charge entirely (an issue not before us), it is hard to see how a new-and-independent-cause instruction would have made it any easier for jurors to blame someone else.

Of course, there are some cases in which failing to give an inferential-rebuttal instruction will be reversible error. For example, if a nonparty intentionally jams an electric switch (thereby defeating designed safety features), it is reversible error to submit a charge that instructs jurors to consider only the negligence of the parties. *See Bel–Ton Elec. Serv., Inc. v. Pickle*, 915 S.W.2d 480, 481 (Tex.1996) (per curiam). Similarly, if a nonparty refuses to provide masks or respirators for employees, it is reversible error to submit a charge that instructs jurors to consider only the negligence of the silica suppliers.

---

1. As a result, *Dillard* made clear (as adopting appellate rule 61.1 should have done) that failure to give the instruction is no longer automatic reversible error regardless of harm.

*See Dresser Indus., Inc. v. Lee,* 880 S.W.2d 750, 754–55 (Tex.1993).

But trial judges should not have to guess whether an analysis of the Restatement's factors means they should submit one inferential-rebuttal instruction rather than another. In this case, the jury was instructed to consider whether the accident occurred because Rowan negligently took down the rope barrier or allowed someone else to do so, or because Paul Dew negligently ducked under it. As the Court's split today adequately illustrates, a new-and-independent-cause instruction would not have made the application of law to these facts any clearer. Accordingly, the court of appeals erred in reversing the jury's verdict on that basis.

Justice JOHNSON, joined by Justice HECHT and Justice GREEN, dissenting.

The issue before us is whether some evidence and permissible inferences from the evidence support Crown Derrick's contention that it was entitled to have a "new and independent cause" instruction in the jury charge. The court of appeals concluded that there was such evidence, reversed the judgment against Crown Derrick, and remanded for a new trial. 117 S.W.3d 526, 537. I agree with the court of appeals and would affirm its judgment.

## I. Factual Background

The Gorilla V drilling rig where Paul Dew fell to his death on September 23, 1998, was owned by the Rowan Companies, Inc. Rowan had contracted with (1) Woolslayer Companies, Inc., to design and manufacture the rig; (2) LeTourneau, Inc., to build the rig; and (3) Crown Derrick to assemble the rig's derrick. The derrick was first to be assembled in three components which were later to be mounted onto the rig.

Because the Gorilla V was to be used in the North Sea, it was required to have two ladders and associated ladder openings to access the different levels of the rig, including the derrick and the derrick's fourble platform. Woolslayer designed the required ladder openings with safety gates around them.

Crown Derrick began the first phase of assembling the derrick into its three components in March 1998. During that part of the assembly process, safety gates and hardware for the crown platform were located, but hardware required to hang a second safety gate on the fourble platform was not. Crown Derrick completed the first phase of the derrick assembly work and left the jobsite.

In August 1998, Crown Derrick returned to the jobsite to mount the derrick's three component pieces onto the rig and complete the assembly and installation. As assembly of the derrick and installation on the rig progressed, hardware required to install a safety gate was still available for only one of the two fourble platform ladder openings. Crown Derrick installed a gate on one of the ladder openings. Having not received mounting hardware for the other ladder opening by the time it was ready to leave the jobsite on August 28, Crown Derrick placed a double-rope barrier on both sides of the ladder opening to prevent workers from falling through it. There was evidence at trial that the double-rope barrier complied with Occupational Safety and Health Administration (OSHA) requirements. Rowan's worksite safety rules required walkaround access openings such as the ladder opening to have "hatches/handrails with gates or *some means* to prevent personnel falling through openings." (emphasis added). Crown Derrick presented testimony at trial that the double-rope barrier complied with Rowan's safety rules.

On September 22, 1998, Crown Derrick returned to the rig construction site to finish hanging the ladders on the derrick. Because of a broken crane, Crown Derrick was unable to get to the fourble platform and left the rig without checking or doing any work on the platform or hanging the ladders.

On September 23, Paul Dew fell through the un-gated ladder opening. He died as a result of the fall.

Testimony was conflicting as to whether a rope barrier protecting the ladder opening was in place when Dew fell. An eyewitness testified that shortly after Dew fell, a worker was seen erecting a rope barrier across one side of the opening. There was evidence that when Crown Derrick left the construction site in August, Rowan's onsite construction manager was told that rope barriers had been placed over the hole for safety, and that Rowan's manager agreed to keep workers off the unfinished platform. There was evidence that sometime between the time Crown Derrick left the worksite in August and Dew's fall on September 23, the double-rope barrier was removed and a two-foot-wide, four-foot-long, and five- to six-foot-tall electrical junction box was placed over the opening. There was also evidence that the junction box was too heavy to be moved manually, so it was subsequently removed by use of an air hoist, and a single-rope barrier was placed around the opening. There was evidence that one week before Dew fell, Rowan's construction manager was on the fourble platform, saw the ladder opening with a single-rope barrier around it, but took no action to change the barrier.

## II. New and Independent Cause

### A. Nature of the Instruction

The plurality opinion refers to "new and independent cause" as an inferential rebut-

tal defense which operates to rebut an element of the plaintiff's case by proof of other facts. Maj. Op. at 449 (citing *Dillard v. Tex. Elec. Coop.*, 157 S.W.3d 429, 430 (Tex.2005) and COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 3.1–3.5 (2003)). The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery. *See Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978). Although "new and independent cause" has been referred to on occasion as an inferential rebuttal theory or defense, *see* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 3.1, cmt. (2003), the instruction has historically been viewed as part of the definition of "proximate cause." *See Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 383–84 (1952) ("The theory of new and independent cause is not an affirmative defense; it is but an element to be considered by the jury in determining the existence or non-existence of proximate cause.").

### B. Standard of Review

We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex.2000). A party is entitled to a jury question, instruction, or definition if the pleadings and evidence raise an issue. Tex. R. Civ. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex.2002). A trial court's error in refusing an instruction is reversible if it "probably caused the rendition of an improper judgment." TEX. R. APP. P. 61.1(a); *Union Pac. R.R. Co.*, 85 S.W.3d at 166.

We have long held that because new and independent cause is part of the proximate cause definition, omission of the instruction and definition is reversible error. *See Young v. Massey*, 128 Tex. 638, 101 S.W.2d 809, 810 (1937) (stating that "[i]t is the settled law of this State that if the evidence in a negligence case raises the issue of new and independent cause, it is reversible error not to include the term in the definition of proximate cause" and that "if such term is necessary to be used in the definition of proximate cause, it is reversible error not to define it"); *Southland Greyhound Lines, Inc. v. Cotten*, 126 Tex. 596, 91 S.W.2d 326, 328 (1936) ("It is reversible error, in a cause in which the testimony tends to prove the injury resulted from a new independent cause, not to submit a definition of 'proximate cause' embodying that term, or a similar term, together with a definition of same."); *see also Bailey*, 250 S.W.2d at 384; *Tarry Warehouse & Storage Co. v. Duvall*, 131 Tex. 466, 115 S.W.2d 401, 405 (1938) ("This court has repeatedly held that where the testimony raises the issue of 'new and independent cause,' the trial court should define such issue, and that it is reversible error not to do so."); *Tex. Motor Coaches, Inc. v. Palmer*, 132 Tex. 77, 121 S.W.2d 323, 323–24 (1938) (same); *Orange & N.W. R.R. v. Harris*, 127 Tex. 13, 89 S.W.2d 973, 975 (1936); *Dixie Motor Coach Corp. v. Galvan*, 126 Tex. 109, 86 S.W.2d 633, 634 (1935); *Phoenix Ref. Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60, 61–62 (1935).

As we explained in *Cotten*,

The term "proximate cause" is a legal term with a fixed and long-established legal meaning. The word in the term which necessitates that it be defined so as to convert it into language employing words of ordinary meaning is the word "proximate." ... "The question always is, Was there an unbroken connection? ... Or was there some new and inde-pendent cause intervening between the wrong and the injury?" "New and independent cause" is likewise a term of fixed legal meaning that must be defined. Again it is not the word "cause" that necessitates a definition of the term; it is the words "new and independent." In other words, there are two kinds of causes to be considered by the jury when there is evidence that negligent acts other than the alleged negligent acts of the parties was responsible for the injury. It is necessary that they be translated by definition into words of such ordinary meaning, and so differentiated, as to enable the jury to properly pass upon the issues.

91 S.W.2d at 328–29 (quoting *Tex. & Pac. Ry. Co. v. Bigham*, 90 Tex. 223, 38 S.W. 162, 164 (1896)).

Over one hundred years ago we held that the trial court's refusal to submit an instruction on an "unavoidable accident" was reversible error, even though other aspects of the jury charge covered the defensive matter. *Galveston, H. & S.A. Ry. Co. v. Washington*, 94 Tex. 510, 63 S.W. 534, 538 (1901). We recognized that in reviewing omissions from the jury charge, we must view the charge "as practical experience teaches that a jury, untrained in the law, would view it." *Id.* Our reason for requiring such a defensive theory to be submitted holds just as true today as then:

It is claimed by counsel for [the plaintiff] that the defense presented by this special charge was covered by the general charge of the court in which the jury were instructed ... [but] it is not to be supposed that the jury considered an issue not developed by the charge of the court. Under such circumstances the defendant had the right to call upon the court to submit specifically the group of

facts and circumstances which raised the issues expressed in the special charge. Without this protection, the jury, in rendering a general verdict under a charge so general as that given, may have disregarded a defense which they might have given effect to, if it had been brought to their attention.

*Id.; see also Reinhart v. Young,* 906 S.W.2d 471, 476 (Tex.1995) (Hecht, J., concurring). Although we have moved to broad-form jury submissions, we do not use the broad-form submissions as a vehicle to deny a party the correct charge to which the party would otherwise be entitled. *See Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 227 (Tex.2005).

## C. Nature of the Evidence Required

Generally, one person is not bound to anticipate negligent conduct on the part of another. *See Ft. Worth & D.C. Ry. Co. v. Shetter,* 94 Tex. 196, 59 S.W. 533, 535 (1900). However, a person's negligence will not be excused where wrongful conduct of a third party is a foreseeable result of such negligence. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 314–15 (Tex.1987) (holding that a tortfeasor's negligence is not superseded by an intervening force or event when the intervening force or event is a foreseeable result of the negligence); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 550 (Tex.1985) (noting that subsequent criminal conduct is not a superseding cause of an injury if the criminal conduct is a foreseeable result of the tortfeasor's negligence). Nor will negligence of a party be excused if an alleged new cause is not such as to break the chain of causation and the original negligence concurs in causing the injury. *See Gulf, C. & S.F. Ry. Co. v. Ballew,* 66 S.W.2d 659, 661 (Tex. Comm'n App.1933, holding approved) (holding that "[w]hen the new cause or agency concurs with the continuing and co-operating original negli-

gence in working the injury," the original party's negligence "remains a proximate cause of the injury, and the fact that the new concurring cause or agency may not in such case have been reasonably foreseeable should not relieve the wrongdoer of liability").

So, two aspects of causation are involved in an intervening event or action rising to the level of a new and independent cause. First, the intervening event or action must not be ordinarily or reasonably foreseeable. *See Phan Son Van v. Pena,* 990 S.W.2d 751, 754 (Tex.1999). Second, the original acts and omissions must have run their course and been completed so that they did not actively contribute in any way to the injuries involved. *See Bell v. Campbell,* 434 S.W.2d 117, 122 (Tex.1968).

In determining whether an intervening force rises to the level of a superseding cause, we have found the factors set forth in section 442 of the Restatement of Torts instructive. *Phan Son Van,* 990 S.W.2d at 754–55. Those factors are:

(a) the fact that the intervening force brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that the intervening force's operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of the force's operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which

is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 442 (1965)).

In *Phan Son Van* we were reviewing a summary judgment to determine whether the proof of intervening cause was conclusive and warranted summary judgment. *Id.* Here we are faced with a different issue: whether there was legally sufficient evidence to raise the issue of intervening cause. *See Bailey*, 250 S.W.2d at 384. The questions of foreseeability and proximate cause generally involve practical inquiries based on "common experience applied to human conduct." *See City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex.1987) (citation omitted). There is legally sufficient evidence of a matter when the proof and inferences from the proof furnish a reasonable basis for reasonable minds to reach differing conclusions as to the existence of the matter. *See Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

### III. Analysis

To determine if there is evidence supporting Crown Derrick's requested new and independent cause instruction, we must review the record to see if there is more than a scintilla of evidence on which reasonable jurors could base a finding that (1) Crown Derrick would not have ordinarily or reasonably foreseen that, even if its rope barriers were removed, the walkway would be left without protection to prevent personnel from falling into the opening; and (2) Crown Derrick's allegedly negligent actions were not continuing, but were complete and had come to rest. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005); *Marathon Corp. v.*

*Pitzner*, 106 S.W.3d 724, 727 (Tex.2003). Although much of the evidence and testimony is in conflict, there is some evidence which would support findings in Crown Derrick's favor as to both such matters.

### A. Foreseeability

The fact that OSHA regulations and industry safety policies existed as to openings on construction sites could support an inference that Crown Derrick would not reasonably foresee Rowan or its contractors removing barriers from around the ladder opening and then leaving the opening unprotected in violation of safety regulations and policies. Further, Rowan had its own worksite safety policies in place, requiring that all openings be protected in some manner by hatches/handrails with gates or some means to prevent personnel from falling through openings. When Crown Derrick left the jobsite, the opening had some means to prevent personnel from falling through the opening. There is evidence that before Dew's accident on September 23, Crown Derrick was not placed on notice that its safety barriers (or their absence) were related to any accidents at the ladder opening and that Crown Derrick did not have control of the fourble platform after it left the jobsite in August.

Evidence was introduced that after Crown Derrick's rope barriers were taken down, worksite and industry safety policies were complied with by persons (1) covering the opening with a heavy electrical junction box, and (2) when Rowan removed that box, erecting more rope barriers. Such evidence would support an inference that Crown Derrick's anticipating the opening would not be left unprotected in violation of safety policies was reasonable. There was evidence that Rowan's experienced construction supervisor was on the fourble platform a week before the acci-

dent and noted the presence of a rope barrier at the ladder opening. Such evidence would support inferences that (1) Rowan's supervisors were aware of the safety rules and inspected the rig to enforce compliance with them, including the rule that openings in walkways were not to be left without safety protections; and (2) the opening being left unprotected by third parties in violation of safety regulations and policies was not reasonably foreseeable to Crown Derrick.

## B. Concurring Cause

The opening in the walkway was a required feature of the rig because it was to be used in the North Sea. Evidence showed that Crown Derrick assembled the derrick and walkway as it was designed, except as to the safety gate for which no mounting hardware was available. In lieu of a safety gate, rope barriers were placed and some evidence showed that the barriers complied with safety rules and would have prevented personnel from falling into the opening. Subsequent removal of the rope barriers and covering of the opening with a junction box was evidence that Crown Derrick's long-completed actions were not a continuing cause of later events such as Dew's fall. Accordingly, there was evidence which would have allowed a jury to infer that absent subsequent independent acts of persons not under Crown Derrick's control, the rope barriers would have prevented Dew from falling through the opening. In sum, there was evidence that Crown Derrick's actions as to safety protections for the opening were complete, had come to rest, and that absent new and independent actions of third parties, Dew would not have fallen.

## C. Restatement Factors

Reviewing the evidence in light of factors in section 442 also leads to the conclu-sion that the removal of Crown Derrick's barriers and failure to replace the barriers or otherwise protect the ladder opening was a new and independent cause of the accident. RESTATEMENT (SECOND) OF TORTS § 442 (1965). The removal of not only Crown Derrick's barrier but also the subsequently placed additional protective devices and failure to reinstall some sort of protection appears to be extraordinary in view of the industry's and Rowan's safety rules, which were applicable to all workers on the rig. See id. § 442(b). The removal by third parties of not only rope barriers from around the opening, but a heavy metal covering placed on the opening at one time, reflect actions operating independently of the situation created when Crown Derrick placed barriers around the designed opening, which some evidence showed complied with applicable safety guidelines. See id. § 442(c). The failure to protect the opening after removal of Crown Derrick's rope barriers was due to third persons working in a controlled construction environment, not Crown Derrick's employees. See id. § 442(d). The removal of Crown Derrick's rope barriers by third persons and failure of those third persons to then place protective devices around the opening was wrongful toward Dew and was such as could subject the third persons to liability for Dew's injuries. See id. § 442(e). The removal of Crown Derrick's protective rope barriers and failure to reinstall some protective mechanism could be viewed as a culpable wrongful act by a third person in connection with the accident. See id. § 442(f).

## IV. Application

The plurality opinion says that the risk of injury within control of and created by Crown Derrick was the risk of injury due to an open hole in the walkway without adequate safeguards. But, the risk of having a ladder opening in a walkway was not

a risk within the control of Crown Derrick. The ladder opening was required by safety rules for drilling rigs to be used in the North Sea. Moreover, industry standards, as well as OSHA's and Rowan's safety rules, recognize a fact of life on construction sites: sometimes openings must be left in floors and walkways for various reasons due to the nature of the construction process. One such reason is the reason for the opening in this case: it was a designed feature.

The risk within the control of Crown Derrick was the risk presented by inadequate safeguarding of the opening. The Court's judgment denies to Crown Derrick its right to have the jury be properly instructed on the question of whether Crown Derrick should have foreseen that third parties would violate industry, OSHA, and worksite safety rules by leaving the ladder opening unprotected, and whether actions of other parties broke the causation chain between any actions by Crown Derrick and Dew's fall.

Foreseeability requires more than viewing the facts in retrospect and charging a party to anticipate an extraordinary sequence of events whereby the defendant's conduct can be said to bring about the injury. *See Doe v. Boys Clubs*, 907 S.W.2d 472, 478 (Tex.1995). The evaluation of evidence as to foreseeability and proximate cause generally involves practical inquiries based on common experience applied to human conduct. *See City of Gladewater*, 727 S.W.2d at 518.

As to harm from the omission, whether Crown Derrick's actions had come to rest and the actions of Rowan and its other contractors were new and independent causes of Dew's fall was a hotly contested issue throughout the trial. Crown Derrick contended in the court of appeals that there was legally insufficient evidence of both elements of proximate cause—cause-in-fact and foreseeability—for the jury finding to be upheld. Although the court of appeals overruled that contention, the evidence on the issue, some of which is referred to above and more of which is referenced by the court of appeals' opinion, reflected the magnitude of the contest at trial over the question.

What we said long ago bears repeating: In reviewing omissions from the jury charge, "we should view the charge as practical experience teaches that a jury, untrained in the law, would view it." *Washington*, 63 S.W. at 538. The discussions in reported cases of whether proximate cause instructions should or should not include new and independent cause language bear witness to the subtleties involved in what is a sufficient subsequent event or force to break the chain of causation between a party's negligence and an occurrence. To fail to instruct the jury on an established legal doctrine raised by the evidence and in serious contention at trial should not be held to be harmless error.

## V. Conclusion

I would hold that a practical view of the evidence in this record yields the conclusion that there is legally sufficient evidence of new and independent cause to require the instruction to have been given as requested by Crown Derrick. I would also hold that the trial court's failure to give the instruction was not harmless.