MEMORANDUM OPINION

 

No. 04-09-00606-CV

 

Thomas BENHAM,

Appellant

 

v.

 

Robert LYNCH,

Appellee

 

From the 225th
Judicial District Court, Bexar County, Texas

Trial Court No. 2006-CI-07047

Honorable Martha
Tanner, Judge Presiding

 

Opinion by:   Rebecca Simmons, Justice

 

Sitting:                     Catherine Stone, Chief Justice

                     Karen
Angelini, Justice

                     Rebecca
Simmons, Justice

 

Delivered and
Filed:  February 2, 2011

 

REVERSED AND
REMANDED 

 

Appellee
Robert Lynch’s motion for rehearing is denied.  This Court’s opinion and
judgment dated August 31, 2010, are withdrawn, and this opinion and judgment
are substituted.  We substitute this opinion to clarify our judgment.

This
appeal arises from two different automobile accidents wherein Appellee Robert
Lynch was rear-ended by Appellant Thomas Benham and then, approximately four
months later, was rear-ended by Robert Kenworthy.[1]  Based
on the injuries to his neck from both accidents, Lynch asked the jury to apportion
causation and damages resulting from each accident.  The jury assessed damages
in the amount of $157,309.94 against Benham and $9,220.40 against Kenworthy. 
On appeal, Benham argues that the evidence is legally and factually insufficient
to support the jury’s verdict and that the trial court erred in failing to give
a “sudden emergency” instruction in the court’s charge.  Because the evidence
raised the sudden emergency defense, and the trial court refused to submit such
an instruction to the jury, we reverse the trial court’s judgment solely with
regard to Appellant Thomas Benham and remand this matter for a new trial
consistent with this opinion.

Factual Background

This
negligence case arises out of two separate automobile accidents that occurred
approximately four months apart.  On September 4, 2004, Benham, who was driving
a pick-up, rear-ended Lynch.[2] 
As Benham exited his vehicle, he immediately apologized, explaining that his
brakes failed prior to impact.  More specifically, Benham told Lynch that his
brakes had just been repaired and said, “I guess me and my buddies didn’t bleed
it well enough.”  Within hours of the accident, Lynch’s neck began feeling “stiff
and achy” and he sought treatment at a minor emergency clinic.  Dr. Hector
Samaniego evaluated Lynch and prescribed physical therapy.  Following the first
accident, Lynch missed twenty-nine days of work due to his injuries.  

           On
January 19, 2005, Lynch was leaving physical therapy and Dr. Samaniego’s office
when he was again rear-ended, this time by Robert Kenworthy.  Immediately
following the accident, Lynch reported “instant
pain . . . that it was severe pain and [that he] could not
move for a few minutes.”  An ambulance took Lynch from the accident and
transported him to the hospital.  He further reported that his pain was worse
following the second accident.  

           At
trial, Lynch explained the difference between the symptoms associated with his
first and second accidents.  He described that the “[f]irst collision was very
bad.  It brought on a new onset of physical impairment that I’ve never had in
the past.  It took a lot more to get me to where I needed to be.”  Additionally,
Lynch opined, “I am pretty sure I would have [had the surgery] before the
second accident” and “[t]he day before the collision . . . I
felt like I was getting worse.  After the second accident, being on pain pills
again and the therapy―ongoing therapy, I guess that’s the only reason why
I was able to go back, but mostly for the pain pills.”  Lynch depicted the
second accident as “the
needle that busted the bubble.  It was just traumatic after that.”  Lynch
concluded that he felt worse after the second accident, and that he planned to have
suggested back surgery as soon as he could afford it.  

           Two
medical experts, Dr. Karl Swann and Dr. Arnulfo Garza-Vale, both neurosurgeons,
testified at trial.  Both agreed that Lynch’s condition worsened after the
second accident with Kenworthy.  Dr. Swann testified that Lynch’s condition had
progressed such that he recommended surgery.  The cost of such surgery would
range between $40,000 and $75,000, and the surgery may result in the patient’s
inability to return to work for three to four months.  However, neither doctor
testified whether the costs of future medical care were attributable to the
first or second accident.  With regard to his loss of income, Lynch explained
that after the first accident, he missed a total of 232 hours of work, and after
the second accident, he missed an additional thirty-two hours of work.  The
jury found both Benham and Kenworthy negligent and that their negligence was
the proximate cause of their respective accidents; yet, the jury awarded
damages against Benham, the driver in the first accident, in the amount of
$157,309.94 and damages in the amount of $9,220.40 against Kenworthy, the
driver in the second accident.[3] 


Sufficiency of the Evidence

Benham
argues that the evidence is legally insufficient to support the damages as
apportioned by the jury.  The thrust of Benham’s complaint is that the evidence
was overwhelming that the majority of Lynch’s damages were attributable to
injuries sustained in the second accident, but the jury wrongly apportioned
seventeen times more damages to Benham.[4] 


A.  Standard
of Review

In
a challenge to the legal sufficiency of the evidence, an appellate court
reviews the evidence in the light most favorable to the challenged finding,
indulging every reasonable inference that would support it and crediting
favorable evidence if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not.  City of Keller v. Wilson,
168 S.W.3d 802, 822–23, 827 (Tex. 2005).  More than a scintilla of evidence
exists, and the evidence is legally sufficient, if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about a vital
fact’s existence.  See Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706,
709–10 (Tex. 2003); Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782–83
(Tex. 2001).  However, “‘[w]hen the evidence offered to prove a vital fact is
so weak as to do no more than create a mere surmise or suspicion of its
existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence.’”  Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004)
(quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).

B.  Causation

           Specifically,
Benham complains that there is legally insufficient evidence of causation to
determine the injuries and damages from each accident.  It is evident from the
jury’s award that it apportioned the full cost of proposed surgery and the
resulting lost income to the first accident with Benham rather than the second
accident with Kenworthy.  Benham complains that the jury completely disregarded
the two medical experts’ opinions.  He argues that there was no expert
testimony that the cause of Lynch’s need for surgery was the first accident and
both doctors concurred that future surgery was attributable to the second
accident with Kenworthy.  Because causation evidence must be provided by expert
testimony, and the only expert testimony on causation attributed the need for
surgery to the second accident, Benham concludes that there is no evidence to
support the jury’s award of damages against him.  

1. 
Required Expert Testimony on Causation

The
general rule has long been that “expert testimony is necessary to establish
causation as to medical conditions outside the common knowledge and experience
of jurors.”  Guevara v. Ferrer, 247 S.W.3d 662, 665 (Tex. 2007).[5] 
The necessity for neck surgery and its cause is generally not within the
experience of the ordinary layperson, but injury as a result of a car
accident could fall within the knowledge and experience of an ordinary juror.  Id. 
To constitute evidence of causation, a medical expert’s opinion must rest on
reasonable medical probability.  Burroughs
Wellcome Co. v. Crye,
907 S.W.2d 497, 500 (Tex. 1995); Ins. Co. of N. Am. v. Myers, 411 S.W.2d
710, 713 (Tex. 1966).  This rule applies whether the expert expresses his opinion
via testimony or through admitted medical records.  In the present case, the
testimony before the jury on causation included the depositions and medical
records of experts Dr. Swann and Dr. Garza-Vale, and records of treating
physician Dr. Samaniego.    

2.  The Testimony

In
addition to expert testimony, Benham points to the nature of the two different
accidents and the immediate aftermath as overwhelming evidence that the second accident
caused the injury that necessitated surgery.  The first accident caused minor
damage, and an incident report noted, “neither of the people involved were
injured.”  After the first accident, treatment ensued over the course of four
weeks, until Lynch reported to a doctor that he “felt like a million bucks.” 
Following the second accident, Lynch felt “instant pain” of a quality so severe
that it frightened him.  He was removed from the scene via ambulance and taken
right to the hospital.  

However,
there is also conflicting testimony in the record concerning the extent of
Lynch’s injuries.  Lynch reported that after the first accident he suffered
severe neck pain, numbness in his left hand and fingers, and pain in the back
side of the arm to shoulder; he could not move his neck to the left; and he
could not sleep without Vicodin.  Additionally, Lynch explained that he could
no longer work extra shifts (where he earned time and a half) and, due to his
continuous pain, his work schedule decreased from five days a week to four days
a week, and finally down to three days per week.  His pain continued, such that
he obtained an appointment for a consultation with Dr. Swann prior to the
second accident.  But he saw Dr. Swann for medical treatment only after the
second accident.  Next, we turn to the expert testimony in the record.

Benham
contends that expert testimony on causation is required to sustain the jury
verdict, and that the conflicting and confusing expert opinions provide no
evidence from which the jury could apportion damages relating to future surgery
and lost income to the first accident.  As a threshold matter, both Dr. Swann
and Dr. Garza-Vale testified that all opinions provided during their
depositions were based on a reasonable degree of medical probability and
certainty.  As Lynch points out, both doctors agreed that the second accident
exacerbated Lynch’s injuries.  Both also made a number of statements that would
support the jury’s award.  See Lee Lewis Constr., Inc., 70 S.W.3d at 782–83
(holding evidence is legally sufficient when it furnishes some reasonable basis
for differing conclusions by reasonable minds about a vital fact’s existence). 
In other words, viewing the record in the light most favorable to the jury’s
award, the jury could have reasonably concluded surgery was necessary due to
the injuries Lynch sustained in the first accident.  Id.

           Specifically,
Dr. Swann opined “that the first accident caused some type of injury to
[Lynch’s] neck,” and that the second accident “exacerbated” the injury.  Additionally,
Lynch’s MRI after the second accident confirmed the herniations at C5-6 and
C6-7 reflected by Lynch’s MRI after his first accident, but showed no changes
after the second accident.  Dr. Swann conceded, at various points in his
testimony, that it would be difficult to pinpoint which of the two accidents
actually caused Lynch’s need for surgery.  Rather than specify which accident
triggered the need for surgery, Dr. Swann suggested Lynch needed surgery
because of injuries he sustained from “a combination of both [the first and
second accidents].”  Moreover, when asked to proffer his opinion on what
prompted the need for surgery, Dr. Swann responded: “Well, I think in this
particular case it was the injury that he had to his neck that has persisted
over time and has evolved the way something like that would over the course of
two-plus years.”  

           Dr. Garza-Vale testified
that he believed Lynch to be suffering not from herniation, but from
spondylosis, a process that takes place over years, and not weeks or days.  He
explained, however, “sometimes there’s an event which causes you to start to
feel [the pain from spondylosis].”  Here, Dr. Garza-Vale regards the first
accident as “an event that caused Mr. Lynch to start feeling [the pain from
spondylosis].”  Additionally, Dr. Garza-Vale confirmed “one way to look at
[Lynch’s need for surgery]” is by “adding together” the injuries Lynch
sustained in the first and second accident.  Through this statement, Dr.
Garza-Vale necessarily admitted that a jury could determine Lynch needed
surgery as a result of both accidents.  In fact, Lynch’s counsel asked Dr.
Garza-Vale: “It’s a combination of both accidents that makes it necessary for
his surgery at this time.  Do you agree with that?”  In response, Dr.
Garza-Vale asserted, “Well, again, that’s one way to look at it.  I mean, you
could look at it different ways.”  

3.
 Analysis

We
must bear in mind that the jury is the sole judge of the credibility of
witnesses and the weight to be given to their testimony.  Golden Eagle
Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  The jury is free to reject testimony of any witness,
including even uncontroverted expert testimony.  See Waltrip v. Bilbon Corp.,
38 S.W.3d 873, 880–82 (Tex. App.—Beaumont 2001, pet. denied) (upholding jury’s
award of medical expenses, but holding that no pain and suffering was rational
if jury believed plaintiff was suffering from degenerative condition unrelated
to the automobile accident).  Moreover, expert
testimony regarding expenses incurred has evidentiary significance, but is not
binding on the jury.  See Prati v. New Prime, Inc., 949 S.W.2d
552, 556 (Tex. App.—Amarillo 1997, writ denied).  The fact that the
doctors’ conclusions potentially conflict with each other does not make the
opinion unreliable or unscientific.  See Gammill v. Jack Williams Chevrolet,
Inc., 972 S.W.2d 713, 727 (Tex. 1998); E.I. du Pont de Nemours & Co.,
Inc. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995).  

Both
parties agree that Lynch sustained injuries in the first accident, and that he
suffered an aggravation from the second accident.  Although the expert
testimony does not specifically address the precise proportion of injury
attributable to each accident, evidence certainly showed that the first
accident initiated the injury that caused pain, which had not subsided and for
which Lynch had been referred to Dr. Swann, a neurosurgeon.  The significance
of the first accident was bolstered by Lynch’s testimony that:  (1) he missed
twenty-nine days of work following the first accident, as compared to only four
days after the second accident; (2) immediately prior to the second accident he
was “getting worse” and his symptoms were not improving; and (3) he felt he
would have needed surgery even without the second accident.  The jury could
have reasonably concluded that Lynch’s injuries were overwhelmingly the result
of a preexisting condition caused by the first accident with Benham.  See Waltrip,
38 S.W.3d at 879; Stephens v. Petry, No. 09-09-00078-CV, 2009 WL
6031288, at *4 (Tex. App.—Beaumont Mar. 11, 2010, no pet.).  Accordingly, based
upon a review of the entire record, there is more than a scintilla of evidence to
support the jury’s award and the evidence is, therefore, legally sufficient. 
We, therefore, overrule Benham’s legal sufficiency issues on appeal.  See Lee
Lewis Constr., Inc., 70 S.W.3d at 782–83. 

Proposed Jury Instruction

Benham
next argues that the trial court erred in failing to include an instruction on
sudden emergency in the court’s charge because there was evidence of his sudden,
unexpected brake failure.  Lynch, however, responds that an instruction was not
appropriate because Lynch’s negligence helped create the emergency.  Further,
because the clerk’s record contains neither a proposed instruction on sudden
emergency nor an objection to the charge, the issue is waived.  Notably, both
parties agree that Benham submitted a proper written instruction regarding
“sudden emergency” to the court, but that it was not available for the clerk’s
record.[6] 


A.  Waiver

When
the trial court omits a requested instruction from the jury charge, a
complaining party must request and tender a substantially correct instruction in
writing.  Tex. R. Civ. P.
278; Medistar Corp. v. Schmidt, 267 S.W.3d 150, 158 (Tex. App.—San
Antonio 2008, pet. denied).  Texas Rule of Civil Procedure 273 provides that “[a]
request by either party for any questions, definitions, or instructions shall
be made separate and apart from such party’s objections to the court’s
charge.”  Tex. R. Civ. P. 273; see
Miller v. Kendall, 804 S.W.2d 933, 938 (Tex. App.—Houston [1st Dist.] 1990,
no writ).  For purposes of review, the clerk’s record must contain the proposed
instruction.  Yzaguirre v. Univ. of Tex. Health Sci. Ctr. at
San Antonio, No. 04-09-00550-CV, 2010 WL 1404620, at *1 (Tex. App.—San
Antonio Apr. 7, 2010, no pet. h.). 
In Yzaguirre, this court held that when the requested instruction is not
contained in the clerk’s record, and not attached to appellant’s motion for new
trial, an appellate court is “unable to determine whether the proposed
instruction amounts to a substantially correct instruction.”  Id.  There
is an important distinction, however, between the Yzaguirre case and the
case before us.  In Yzaguirre, the record did not support that the
appellant submitted a written, substantially correct jury instruction to the
trial court.  Id.  In the present case, the record reflects and the
parties agree that Benham’s counsel submitted the proposed charge to the court;
it just could not be located for the clerk’s record. 

Counsel
for Lynch objected to the inclusion of the sudden emergency instruction as
confusing and inapplicable.  The record is clear that the attorneys and the
trial court clearly understood Benham’s argument and requested instruction for
sudden emergency.  In light of Lynch’s acknowledgement that the proposed charge
included in Benham’s appendix is a copy of the written instruction tendered to
the trial court, we conclude that Benham preserved error for appellate review. 

B.  Sudden
Emergency Instruction

1. 
Standard of Review

The
trial court’s decision to refuse an instruction in its charge is reviewed for an
abuse of discretion.  Dew v. Crown Derrick Erectors, Inc., 208 S.W.3d
448, 456 (Tex. 2006).  “If an instruction might aid the jury in answering the
issues presented to them, or if there is any support in the evidence for an
instruction, the instruction is proper.”  Louisiana-Pacific Corp. v.
Knighten, 976 S.W.2d 674, 676 (Tex. 1998); see also Tex. R. Civ. P. 277.  Any error
regarding a requested instruction is not reversible error unless it was
reasonably calculated to cause and probably did cause the rendition of an
improper judgment.  Louisiana-Pacific Corp., 976 S.W.2d at 676; see
also Tex. R. App. P. 44.1(a).

2. 
Inferential Rebuttal

Sudden
emergency is an inferential rebuttal defense, not an affirmative defense that
must be pleaded.  See Dillard v. Tex. Elec. Co-Op., 157 S.W.3d 429, 433–34
(Tex. 2005).  An inferential rebuttal defense operates to rebut an essential
element of the plaintiff’s case by proof of other facts.  Id. at 430.  The
purpose of a sudden emergency instruction is to advise the jurors that if the
evidence shows that conditions beyond the party’s control caused the accident
in question, or that the conduct of some person not a party to the litigation
caused it, the jury need not blame a party.  Id. at 432; see also
DeLeon v. Pickens, 933 S.W.2d 286, 293 (Tex. App.—Corpus Christi 1996,
writ denied) (“[T]he only purpose of the sudden emergency defense doctrine is
to relieve a party from the consequences of his conduct that might otherwise be
considered negligent.”).  

3. 
Requirements for Submission of Sudden Emergency Instruction

To
warrant the submission of an instruction on sudden emergency, there must be
evidence that: 

(1)    an
emergency situation arose suddenly and unexpectedly, 

(2)    the
emergency situation was not caused by the defendant’s negligence, and 

(3)    after the emergency situation arose, the defendant acted as a
person of ordinary prudence would have acted.  

 

Thomas v.
Oldham, 895 S.W.2d 352, 360 (Tex. 1995); Jordan v. Sava, Inc., 222
S.W.3d 840, 848 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  The
evidence, even if conflicting, need only raise a fact issue regarding each of
the elements of sudden emergency.  Jordan, 222 S.W.3d at 848; DeLeon,
933 S.W.2d at 294 (“The inclusion of an instruction on [sudden] emergency does
not constitute error, . . . when the evidence conflicts as to whether the
defendant’s actions prior to the ‘emergency’ . . . were suspect.”).  In fact,
if there is any support in the evidence for a sudden emergency
instruction, the instruction is properly given.  Id.; Louisiana-Pacific
Corp., 976 S.W.2d at 676.  

Lynch
asserts that the sudden emergency doctrine is not available to a driver whose
own negligence or wrongful conduct has created the emergency under
consideration.  See Higginbotham v. Ritchie, 367 S.W.2d 210, 212 (Tex.
Civ. App.—Fort Worth 1963, no writ).  While the law provides that a motorist
driving behind another vehicle “must drive at a reasonable speed, keep back a
reasonable distance, and keep his vehicle under reasonable control to provide
for the contingency that a vehicle in front [may suddenly stop],” the mere
occurrence of a rear-end collision does not establish negligence as a matter of
law.  DeLeon, 933 S.W.2d at 289.  Rather, whether a rear-end collision
raises an issue of negligence or establishes negligence as a matter of law
depends on all the facts and circumstances of the case.  Id.  

4.  Analysis

In
the present case, Lynch complains that the sudden emergency doctrine is
inapplicable here because Benham’s negligence helped create the emergency.  

           The
sudden emergency doctrine is applicable in cases involving rear-end collisions
when the defendant’s negligent actions are a result of emergency
conditions, but not when the defendant’s actions prior to the emergency
are negligent.  In short, the evidence must be such that the jury could find
that the collision was not proximately caused by the defendant’s own
pre-emergency negligence.  

 

Jordan,
222 S.W.3d at 849–50 (internal citations omitted).  Lynch testified that Benham
told him that “he and his buddies” had just worked on the brakes and must not
have bled them adequately.  According to Benham’s testimony, the cap on the
master cylinder “popped off” and, when replaced, the brakes malfunctioned. 

To
determine whether a sudden emergency instruction was proper in this case, this
court must determine whether the evidence raised a fact issue as to each of the
elements of sudden emergency.  Id.  Here, it was undisputed that
Benham’s brakes had some maintenance performed prior to the accident.  At
trial, both Lynch and Benham testified that Benham immediately reported that
his brakes failed thereby causing the accident.  There was conflicting evidence
on Benham’s role in the brake failure.  

           Based
on a review of the record, Benham’s testimony, as well as the other evidence
introduced at trial, raised an issue of fact on sudden emergency.  See
DeLeon, 933 S.W.2d at 294; see also Carter v. Helicopter Ambulance Serv.
of N. Tex., Inc., No. 05-95-00468-CV, 1996 WL 403987, at *5 (Tex.
App.—Dallas July 19, 1996, writ denied).  Consequently, the trial court abused
its discretion by failing to submit the sudden emergency instruction.  See
DeLeon, 933 S.W.2d at 288, 294.  

A
court of appeals may reverse a trial court’s judgment only if the court of
appeals holds that the complained of error was harmful.  Tex. R. App. P. 41(a).  When a jury
instruction is requested and erroneously refused, the error is harmful if the
instruction was reasonably necessary to enable the jury to render a proper
verdict.  Louisiana-Pacific Corp., 976 S.W.2d at 676.  If the jury would
have found that a sudden emergency resulted in Benham rear-ending Lynch, Benham
would not be liable to Lynch for negligence.  See Dillard, 157 S.W.3d at
434.  Thus, because Benham’s evidence raised a fact issue as to the existence
of a sudden emergency, the jury’s consideration of the factual dispute was
reasonably necessary to enable the rendition of a proper verdict.  See Louisiana-Pacific
Corp., 976 S.W.2d at 676; see also Chem. Exp. Carriers, Inc. v. Pina,
819 S.W.2d 585, 589 (Tex. App.—El Paso 1991, writ denied) (failure to instruct
the jury as to sole proximate cause was harmful because it would have defeated
the defendant’s liability).  Accordingly, we remand this case to the trial
court for further proceedings consistent with this opinion.[7]

Conclusion

           Although
both experts opined that the second accident caused Lynch’s need for surgery,
under cross examination, both experts also conceded it was likely a combination
of the two accidents resulting in Lynch’s injuries.  Additionally, Lynch’s own
testimony, which indicated that he missed almost six weeks of work after the
first accident, and only four days of work after the second, supports the
severity of the injury from the first accident.  As such, there is more than a
scintilla of evidence to support the jury’s verdict and the evidence is,
therefore, legally sufficient.  However, because the evidence raises a fact
issue with regard to the defense of sudden emergency, the trial court erred in
refusing Benham’s requested instruction in the jury charge.  Accordingly, we
reverse the trial court’s judgment solely with regard to Appellant Thomas
Benham[8]
and remand this matter for a new trial consistent with this opinion.

 

Rebecca Simmons, Justice

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 









[1]  Defendant Robert Kenworthy did not appeal the trial
court’s judgment.





[2] 
Lynch was driving an ambulance while on duty as
a paramedic.





[3]  Damages were awarded as follows:                                   Benham                           Kenworthy

             Physical
pain and mental anguish (past)                  $20,000                           $5,000

             Physical
pain and mental anguish (future)               $10,000                           

             Loss
of earning capacity (past)                                $3,500                $422.40

             Loss
of earning capacity (future)                            $9,000

             Physical
impairment (past)                                                   $30,000

             Physical
impairment (future)                                   $12,500

             Medical
expenses (past)                                          $22,309.40         $1,800

             Medical
expenses (future)                                       $50,000              $2,000

                                                     Total                               $157,309.94
      $9,220.40





[4] 
$157,309.94 for the first accident and $9,220.40
for the second.  





[5]  However, there is an exception when lay testimony
can support causation.  Id.; Morgan v. Compugraphic Corp., 675
S.W.2d 729, 732 (Tex. 1984).  In limited circumstances: “the existence and
nature of certain basic conditions, proof of a logical sequence of events, and
temporal proximity between an occurrence and the conditions can be sufficient
to support a jury finding of causation without expert evidence.”  Guevara,
247 S.W. 3d at 667.





[6]  Lynch’s counsel acknowledged that the proposed
charge included in Benham’s appendix is a copy of the proposed charge provided
to the trial court at the charge conference, as referenced in the reporter’s
record.  The proposed sudden emergency instruction is from the Texas Pattern
Jury Charges P.J.C. 3.3 (2006).  See Comm. on Pattern Jury Charges,
State Bar of Tex., Texas Pattern Jury
Charges P.J.C. 3.3 (2006).  

 





[7]  Because the sudden emergency instruction is
dispositive of this appeal, we need not address Appellant’s remaining factual
sufficiency issue.  See Tex. R.
App. P. 47.1 (encouraging concise opinions addressing only those issues
“necessary to final disposition of the appeal”).





[8]  Although Lynch argues that this court should remand
for a new trial on all claims, we disagree.  An appellate court “is not
authorized to reverse a trial court’s judgment in the absence of a properly
assigned error.”  Gulf Consol. Int’l, Inc. v. Murphy, 658 S.W.2d 565,
566 (Tex. 1983).  Although Lynch complains of the effect that not reversing the
judgment as to Kenworthy could have on remand, Benham has the option on remand
of designating Kenworthy as a responsible third party so that the jury can
apportion responsibility between the defendant and non-parties.  See Tex. Civ. Prac. & Rem. Code Ann. §
33.004 (West 2008); see also Builders Transport, Inc. v. Grice-Smith,
167 S.W.3d 18 (Tex. App.—Waco 2005, pet. denied).