**Affirmed in Part; Reversed in Part; Judgment Rendered and Majority and Dissenting Opinions filed May 8, 2012.**



**In The**

# Fourteenth Court of Appeals

———————————

**NO. 14-10-00115-CV**

———————————

**JILES DANIELS, Appellant**

**V.**

**EMPTY EYE, INC., EMPTY EYE & ASSOCIATES, L.P., AND JUDITH DANIELS, Appellees**

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-02141**

## OPINION

Jiles Daniels was sued by his former wife Judith Daniels and two of the former couple's businesses for breach of fiduciary duty and breach of contract. A jury found that Jiles owed a fiduciary duty to the company in which he previously had been a limited partner and that he breached his fiduciary duty both to the limited partnership and to the corporation that served as the general partner. The jury also found that Jiles breached the limited partnership agreement, causing damages to Judith and both companies. The trial court rendered judgment in favor of the limited partnership on the breach-of-fiduciary-duty

claim and in favor of Judith and the corporation on the breach-of-contract claim. We affirm the portion of the judgment awarding damages to the limited partnership for breach of fiduciary duty, and reverse the judgment as to the contract claims.

## I. FACTUAL AND PROCEDURAL HISTORY

Jiles Daniels married Judith Daniels in 1997, and in 2000, they formed Empty Eye, Inc. ("the Corporation"). Jiles and Judith each owned half of the shares in the Corporation, and each was a corporate officer. That same year, the Corporation, Jiles, and Judith signed a Limited Partnership Agreement ("the Partnership Agreement") regarding the formation and operation of Empty Eye & Associates, L.P. ("the Limited Partnership"). The Corporation owned one percent of the Limited Partnership and served as the general partner, and Jiles and Judith were the limited partners.

The companies were involved in the construction and management of apartment complexes near Prairie View A&M University. After building two apartment complexes, they planned to build another, which the parties call "the Cochran Project." The Limited Partnership bought land for the Cochran Project in 2005, obtained construction financing from Independence Bank, N.A. (the "Bank"), and in September 2006, the Limited Partnership entered into a construction loan agreement with the Bank. Pursuant to that agreement and as part of the financing for the Cochran Project, Jiles and Judith each executed a personal guaranty of the Limited Partnership's indebtedness to the Bank. By its terms, each guaranty could be rescinded if no funds had been advanced. By the fall of 2006, the Limited Partnership had entered into contracts with contractors for work on the Cochran Project.

During this time, Jiles and Judith began to have marital difficulties. Jiles testified that in the fall of 2006, he became concerned when he learned that Judith had made payments on the Limited Partnership's debt to a different bank using credit cards with a thirty-percent interest rate. In December 2006, Jiles filed a divorce petition in Montgomery County, Texas. The Bank had not yet advanced any funds for the Cochran

2

Project, and in January 2007, Jiles notified Judith that he did not want to proceed with construction. On February 22, 2007, Jiles rescinded his personal guaranty on the construction loan and asked the Bank not to advance any funds for the Cochran Project. A few days after Jiles rescinded his personal guaranty, the Bank rescinded the construction loan and invited Jiles and Judith to reapply for a loan jointly or individually,

Jiles also contacted concrete contractors on the Cochran Project and informed them that he did not authorize their work. He advised them that before performing any work on the Cochran Project, they should ensure that they would be paid. In addition, he notified at least one concrete contractor that the construction loan had been rescinded. Jiles later testified that he contacted the contractors because he did not want to be personally responsible for any liabilities arising from the Cochran Project.

In January 2008, Judith, the Limited Partnership, and the Corporation sued Jiles in Harris County for breach of fiduciary duty and breach of contract. As relevant to this appeal, the jury found that Jiles had a relationship of trust and confidence with the Limited Partnership, and that he breached his fiduciary duty to the Limited Partnership, causing damages of $171,601.21. The jury also found that Jiles breached his fiduciary duty to the Corporation, causing the Corporation damages of $1,733.35. Finally, the jury found that Jiles breached the Limited Partnership Agreement, causing the plaintiffs damages of $173,334.56. The trial court rendered judgment that (1) the Limited Partnership recover $171,601.21 for breach of fiduciary duty; (2) Judith and the Corporation recover $173,334.56 for Jiles's breach of the Partnership Agreement; and (3) Judith, the Limited Partnership, and the Corporation recover $160,837.14 for attorneys' fees through the date of judgment. The trial court also awarded Judith, the Limited Partnership, and the Corporation pre- and post-judgment interest, taxed costs against Jiles, and conditionally awarded the plaintiffs additional attorneys' fees in the event that Jiles brought unsuccessful appeals.

3

## II.   ISSUES PRESENTED

Jiles presents five issues for our review.   In his first issue, he contends that the evidence is legally and factually insufficient to support the finding that he owed a fiduciary duty to the Limited Partnership.   In his second issue, he challenges the legal and factual sufficiency of the evidence that he breached the Limited Partnership Agreement or that Judith or the Corporation sustained any damages.   He argues in his third issue that the trial court erred in awarding damages for both breach of fiduciary duty and breach of contract. In his fourth issue, he contends that the trial court erred in awarding damages "based on conduct [which] was agreed to by the parties and commemorated in multiple court orders" by the divorce court.   Finally, he asserts in his fifth issue that the trial court erred in denying his motion for new trial because res judicata bars the claims at issue in this case.

## III.   STANDARD OF REVIEW

When a party challenges the legal sufficiency of the evidence to support a finding, we review the record in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not.   *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).   The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review.   *Id.*   Evidence is legally insufficient only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact.   *Id.* at 810.

When a party challenges the factual sufficiency of a finding for which he did not have the burden of proof, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust.   *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998).   We bear in mind that we

4

may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence clearly would support a different result. *Id.* at 407.

## IV. ANALYSIS

### A. Preservation of Error

Because Jiles argues on appeal that the evidence is legally and factually insufficient to support various jury findings on which the judgment is based, we begin our analysis by clarifying the extent to which these challenges have been preserved.

In a case tried to a jury, an argument that the evidence is legally insufficient to support a finding can be preserved for appeal in one of five ways: (1) a motion for directed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *See Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex. 1988) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)); *United Parcel Serv., Inc. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In contrast, a party challenging the factual sufficiency of the evidence to support a jury finding must raise this issue in a motion for new trial to preserve error. *See* TEX. R. CIV. P. 324(b)(2), (3); *Halim v. Ramchandani*, 203 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Of all of these recognized ways of preserving challenges to the sufficiency of the evidence, Jiles filed only a motion that he styled as a motion for new trial. But, to determine the nature of this document, we do not look solely at its title, but consider also the substance of the pleas for relief. TEX. R. CIV. P. 71; *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (per curiam). In *Ryland Enterprise*, the Texas Supreme Court addressed circumstances analogous to those presented here. In that case, the jury returned a verdict in the plaintiff's favor, and before the trial court rendered judgment, the defendant filed a motion styled as a motion for judgment notwithstanding

5

the verdict. *Id.* at 665. In the motion, the defendant attacked the legal sufficiency of the evidence and asked the trial court to render a verdict favorable to the defense, or in the alternative, to order a new trial. *Id.* at 666. Given the nature of the relief requested, the court reasoned that the defendant's motion, although premature, was in effect a motion to modify the judgment because the defendant "assailed the judgment that was eventually signed." *Id.* And because the defendant alternatively requested a new trial, the motion also served as a motion for a new trial. *See id.*

Here, Jiles asked the trial court to order a new trial, or alternatively, to render a take-nothing judgment on all of the plaintiffs' claims. We therefore construe the motion not only as a motion for new trial, but also as a motion for modification of the judgment or for judgment notwithstanding the verdict. Thus, we conclude that the legal-sufficiency arguments raised in the motion are preserved for our review. But, because Jiles did not include in the motion any challenges to the factual sufficiency of the evidence, those arguments were not preserved, and we do not consider them on appeal. *See* TEX. R. APP. P. 33.1(a) (preservation of error in the trial court is a prerequisite to appellate review).

**B.      Existence of a Fiduciary Relationship with the Limited Partnership**

In his first appellate issue, Jiles argues that he had no fiduciary duty to the Limited Partnership, and thus, the evidence necessarily is legally insufficient to show that he breached such a duty.

A "fiduciary" is a "person who occupies a position of peculiar confidence towards another." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 571, 160 S.W.2d 509, 512 (1942). Certain formal relationships, such as that between an attorney and a client or between a trustee and the trust's beneficiaries, give rise to a fiduciary relationship as a matter of law. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). An informal fiduciary relationship, also known as a "confidential relationship," may arise "'where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one.'" *Crim Truck & Tractor Co. v. Navistar*

6

*Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992) (quoting *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951)), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002). The existence of an informal relationship is "determined from the actualities of the relationship of the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). If a business transaction is involved, "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998).

Because Jiles did not object to the jury charge, it is the standard by which we measure the sufficiency of the evidence. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005). In the first question of the charge, the jury was asked, "Did a relationship of trust and confidence exist between Jiles Daniels and either [Judith or the Limited Partnership]?" As relevant to Jiles's first issue, this question was accompanied by the following instructions:

> A relationship of trust and confidence existed if Plaintiff justifiably placed trust and confidence in Jiles Daniels to act in its best interest. Plaintiff's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.
>
> . . .
>
> You are instructed that a limited partner does not owe a fiduciary duty to the limited partnership or another limited partner simply because of his status as a limited partner.[1]

Given the breadth of the instructions, the jury properly could find that a confidential relationship existed if there was more than a scintilla of evidence that the Limited

---

[1] The jury also was instructed that "a limited partner does not participate in the control of the business" by performing certain actions. This instruction is not relevant to the issue presented because the jury was neither asked to determine whether Jiles participated in control of the limited partnership's business nor instructed that there was any relationship between control and the existence of a confidential relationship.

7

Partnership justifiably trusted Jiles to act in its best interest, as long as that trust was not based solely on Jiles's status as a limited partner or solely on the Limited Partnership's "subjective trust and feelings." The record contains such evidence.

When the Cochran Project began, Jiles Daniels already had formal fiduciary relationships with every other member of the Limited Partnership. Aside from Jiles, the only other members of the Limited Partnership were Judith and the Corporation. Jiles owed the Corporation a fiduciary duty because he was its president. *See Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (corporate officers owe fiduciary duties to the corporation). He had a fiduciary relationship with Judith because he was married to her. *See Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009) ("[T]he marital relationship between spouses is a fiduciary relationship."). These relationships predated the transactions involved in the Cochran Project. *See CAT Contracting, Inc.*, 964 S.W.2d at 288. Although the facts were disputed, there was evidence that Jiles participated in developing the Limited Partnership's business plan, and Judith trusted him as a business partner. Jiles and Judith used the Limited Partnership not only in buying, developing, and managing real estate for rental purposes, but also in building and purchasing their own residence. Although Jiles and Judith were limited partners and were not otherwise obligated to do so, they personally guaranteed payment of the Limited Partnership's debt to commercial lenders.

Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Jiles had a fiduciary relationship with the Limited Partnership. *Cf. Dunnagan v. Watson*, 204 S.W.3d 30, 46–47 (Tex. App.—Fort Worth 2006, pet. denied) (overruling legal-sufficiency challenge to the evidence supporting the jury's finding that a person who was both a limited partner and the president of the corporate general partner breached fiduciary duties to the limited partnership); *Grierson v. Parker Energy Partners 1984-I*, 737 S.W.2d 375, 377–78 (Tex. App.—Houston [14th Dist.] 1987, no writ) (stating that an officer of a corporate general partner who knowingly

8

participates in the corporation's breach of its fiduciary duty to the limited partnership may be held personally liable). We therefore overrule Jiles's first appellate issue and affirm the portion of the judgment in which the trial court awarded damages to the Limited Partnership for Jiles's breach of fiduciary duty.

## C.      Breach of the Partnership Agreement

In his second issue, Jiles argues, *inter alia*, that the evidence is legally insufficient to support a finding that he breached the Limited Partnership Agreement. We agree.

When determining the obligations of contracting parties, courts generally look only to the written agreement. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747 (Tex. 2003). Nothing in the Limited Partnership Agreement required Jiles to act as the Limited Partnership's guarantor or restricted his right to rescind the guaranty. The Limited Partnership Agreement instead provided in pertinent part as follows:

> [T]he Limited Partners shall, upon notice from the General Partner, make additional Capital Contributions as requested by the General Partner in proportion to their limited partnership interests. Each such additional contribution or financial inducement shall be made at the request, in such manner and in such amount as the General Partner shall specify, and shall be reflected as a credit in such Limited Partner's Capital Account.
>
> . . .
>
> Provided that the Limited Partners act in accordance with this Agreement and except as otherwise provided by an Assumption Agreement, no Limited Partner shall be liable for the debts, liabilities, contracts, or any other obligations of the Partnership. Except as otherwise provided by any other agreements among the Partners or mandatory provisions of applicable state law, a Limited Partner shall be liable only to make his Capital Contributions and shall not be required to lend any funds to the Partnership or, after his Capital Contributions have been made, to make any additional Capital Contributions to the Partnership.
>
> . . .

9

No Partner shall be required to make any additional contributions to the Partnership except as expressly provided in this Agreement.

. . .

None of the Partners shall be obligated to make any loan or advance to the Partnership.

Under the terms of the Limited Partnership Agreement, no limited partner was expressly required to act as a guarantor of the Limited Partnership's debts. Judith nevertheless contends that because Jiles was the president of the general partner and gave his personal guaranty to the Bank, it is logical to infer that the guaranty was requested by the general partner. But, under the terms of the Limited Partnership Agreement, any such request was required to be made or memorialized in writing. There is no evidence that any such request was made or communicated in any form. Moreover, such an inference would not be logical, but instead would be an example of the logical fallacy known as "affirming the consequent." *See Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000) ("That is like saying, 'Pneumonia makes you cough; therefore, if you cough, you have pneumonia. This is the logical fallacy called 'affirming the consequent.'"). *See also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 129 S. Ct. 2710, 2720, 174 L. Ed. 2d 464 (2009) (rejecting an argument in which "[i]ts fundamental contention . . . rests upon a logical fallacy"); *Lyondell Petrochemical Co. v. Fluor Daniel, Inc.*, 888 S.W.2d 547, 554 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (op. on reh'g) (rejecting argument based on logical fallacy).[2]

Judith also asserts that "once [Jiles] agreed to be bound to that obligation [to personally guarantee the construction loan], he was required to honor *that* contractual promise." But, the terms of Jiles's agreement with the Bank expressly permitted Jiles to

---

[2] Even if the agreement Jiles signed could be considered evidence that the general partner asked him to sign the agreement, this evidence could show only that he was asked to sign a revocable guaranty; thus, rescinding his guaranty still would not be evidence that Jiles breached the Limited Partnership Agreement.

rescind his guaranty before any funds were advanced, and he did not breach the guaranty agreement by doing so.

Finally, Judith cites language from the Limited Partnership Agreement concerning the Corporation's obligation to take actions to further the Limited Partnership's purpose, and its obligation to refrain from "engaging in any activity that would make it impossible for the [Limited Partnership] to carry on its business." This language provides no basis on which to affirm the judgment in favor of Judith and the Corporation on their contract claims. Although Jiles was the Corporation's president at the time the contract claims accrued, he and the Corporation are distinct entities with different obligations. As the general partner, the Corporation was liable for the Limited Partnership's debts; as a limited partner, Jiles was not. Further, the Limited Partnership continued to own and lease other properties throughout the parties' disputes about the financing and development of the Cochran Project.

Because the evidence is legally insufficient to support the finding that he breached the Limited Partnership Agreement, we sustain the legal-sufficiency challenge presented in Jiles's second issue. We accordingly reverse the portion of the judgment awarding damages to Judith and the Corporation for breach of the Limited Partnership Agreement. Because this eliminates the only basis on which the trial court could have awarded attorney's fees, we reverse that award as well. In light of the disposition of this issue, we do not reach Jiles's third issue, in which he argued that the trial court's award of damages for both breach of fiduciary duty and breach of contract constituted a double recovery for a single injury.[3]

---

[3] In his third issue, Jiles also argued that the evidence was factually insufficient to support the contract damages awarded, but as previously mentioned, his factual-sufficiency arguments were not preserved for review.

11

**D.     Effect of the Divorce Court's Orders**

In his fourth issue, Jiles argues that, as a matter of law, Judith, the Corporation, and the Limited Partnership cannot have sustained any damages because completion of the Cochran Project was prohibited by three orders issued by the trial court in the divorce case. Jiles did not preserve error in the trial court by asserting this argument in one of the five ways permitted for preserving "no evidence" or "matter-of-law points." *See United Parcel Serv., Inc.*, 25 S.W.3d at 916.   We accordingly overrule Jiles's fourth issue.

**E.     Res Judicata**

Nearly a year before trial, Jiles moved unsuccessfully for summary judgment on the ground, *inter alia*, that the divorce decree precluded all of the claims asserted in this action. After the verdict in this case, Jiles filed a motion titled "Defendant's Motion for Reconsideration of Motion for Summary Judgment on *Res Judicata*."   After the trial court rendered judgment, Jiles filed an amended motion for new trial in which he stated, "Defendant reasserts that Plaintiffs' claims are barred by *res judicata* because they were, or could have been, brought in the divorce action between Judith and Jiles Daniels. Defendant therefore incorporates by reference his motion for summary judgment . . . and his motion for reconsideration . . . ."

The denial of a motion for summary judgment usually is reviewable only if the trial court granted a cross-motion for summary judgment or review is authorized pursuant to statute.   *See* TEX. CIV. PRAC. & REM. CODE § 51.014 (West Supp. 2011) (authorizing appeal of interlocutory orders under certain conditions); *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007) (addressing appeals of cross-motions for summary judgment).   Thus, as a threshold matter, we must determine whether Jiles's res judicata arguments are reviewable on appeal.   We conclude that they are.

In his post-trial motions, Jiles reurged one of the same arguments asserted in his earlier motion for summary-judgment, and he continued to refer to the requested relief as a

12

summary judgment; however, these requests were made weeks after the jury returned a verdict on all of the disputed claims. Thus, the relief he sought cannot properly be considered a summary judgment. *See Tregellas v. Jake's Casing Crews, Inc.*, 376 S.W.2d 792, 794 (Tex. Civ. App.—Amarillo 1964, writ ref'd n.r.e.) (stating that when a judgment was rendered only after three witnesses were examined and cross-examined, "calling the judgment a summary judgment would not make it one because it was not summarily rendered"). Summary judgments are used to end litigation short of trial or to narrow the issues for trial by "'eliminat[ing] patently unmeritorious claims and untenable defenses.'" *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989) (quoting *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979)). After the jury returned a verdict, Jiles no longer sought to narrow the issues to be tried; rather, he sought to prevent an unfavorable verdict from becoming an adverse judgment. In effect, he moved for judgment notwithstanding the verdict. *See Ryland Enter.*, 355 S.W.3d at 666 ("[C]ourts should acknowledge the substance of the relief sought despite the formal styling of the pleading . . . .").

In all of the motions in which Jiles asserted the res judicata defense, he asked the trial court to dismiss the plaintiffs' claims. This, too, is a misnomer. If a defendant establishes that the claims against him are barred by res judicata, the trial court should render a take-nothing judgment rather than a judgment dismissing the claims. *Walker v. Sharpe*, 807 S.W.2d 442, 447 (Tex. App.—Corpus Christi 1991, no writ) (citing *Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967). In effect, however, there is no difference between a dismissal with prejudice and a take-nothing judgment, and the terms frequently are used interchangeably. *See, e.g.*, *Hot-Hed, Inc.v Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 725 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (defendant prayed that the trial court would dismiss plaintiff's claims with prejudice and enter an order that plaintiff take nothing on its claims); *Herring Bank v. Centro Cristiano La Voz Que Clama*, No. 14-09-00874-CV, 2011 WL 61850, at *1 (Tex. App.—Houston [14th Dist.] Jan. 6, 2011, no pet.) (mem. op.) (relating that the trial court "ordered

[plaintiff] to take nothing by reason of its suit and dismissed [plaintiff's] suit without prejudice"). *See also Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 354–55 (Tex. App.—San Antonio 1999, pet. denied) (courts may treat a pretrial dismissal with prejudice as a summary judgment because the two have the same effect). Moreover, in all of these motions, whether styled as a motion for summary judgment, for reconsideration, or for new trial, Jiles prayed for "such other and further relief, in law or in equity, to which he may show himself justly entitled." Although his post-verdict motion was styled as a motion for reconsideration, Jiles in effect asked the trial court to render a take-nothing judgment on all of the plaintiffs' claims. We therefore construe the request as a premature motion for modification of the judgment or for judgment notwithstanding the verdict. Thus, we conclude that Jiles's res judicata argument is preserved for appellate review. TEX. R. APP. P. 33.1(b) ("In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion . . . ."); *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (reviewing judgment notwithstanding the verdict); *Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 207 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (reviewing denial of motion for judgment notwithstanding the verdict in which appellants asserted that they conclusively proved their affirmative defense as a matter of law).

Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in a prior action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). To establish that res judicata bars a plaintiff's claims, the defendant must establish that (a) there is a prior final judgment on the merits by a court of competent jurisdiction; (b) the party currently asserting a claim also was a party to the prior action or was in privity with a party to the prior action; (c) the current claims were raised, or could have been raised, in the prior action. *Id.* As the Texas Supreme Court has explained, the definition of res judicata "is substantially similar to the rule of compulsory counterclaims embodied in the rules of civil procedure." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992) (citing TEX. R. CIV. P. 97(a)).

A defendant "must bring as a counterclaim any claim that 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and may be foreclosed by res judicata from litigating it in a subsequent suit. *See id.* at 630 (quoting TEX. R. CIV. P. 97). To determine what claims are precluded by an earlier judgment, we must compare "the factual matters that make up the gist of the complaint" in each claim. *Id.* This transactional approach "giv[es] weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* at 631 (quoting RESTATEMENT OF JUDGMENTS § 24(2) (1942)).

Jiles argues that all of the claims asserted in this case are barred because they were, or could have been, fully litigated in the divorce; however, the record does not establish conclusively that Jiles's petition for divorce arose from the same transaction as the claims for breach of contract and breach of fiduciary duty asserted by Judith, the Limited Partnership, and the Corporation. The record also does not show that treatment of the division of the marital estate and litigation of the contract and fiduciary-duty claims as a "trial unit" would have conformed to the parties' expectations, business understanding, or usage. This can be seen in that the divorce decree is an agreed judgment, and Judith and Jiles reached that agreement knowing that the Corporation and the Limited Partnership were not parties in the divorce action, and that all of the claims for breach of contract and breach of fiduciary duty were being separately litigated in another county.[4] Jiles and Judith then initialed the provision in the final divorce decree in which the trial court stated that "all relief requested *in this case* and not granted is expressly denied." (emphasis added).

---

[4] *Cf.* TEX. R. CIV. P. 97 (providing that a "judgment based upon a settlement or compromise of a claim of one party to the transaction or occurrence prior to a disposition on the merits shall not operate as a bar to the continuation or assertion of the claims of any other party to the transaction or occurrence unless the latter has consented in writing that said judgment shall operate as a bar").

We therefore overrule Jiles's fifth issue, and hold that the trial court did not err in allowing Jiles's post-trial motions to be overruled by operation of law.

## V.   CONCLUSION

We conclude that on the facts of this case, the evidence is sufficient to support the jury's finding that Jiles had a confidential relationship with the Limited Partnership; thus, we affirm the portion of the judgment in which the trial court awarded Empty Eye, & Associates, L.P. $171,601.21 for Jiles's breach of his fiduciary duty.   On the other hand, the evidence is legally insufficient to support the jury's finding that Jiles breached the Limited Partnership Agreement.   We therefore reverse the portion of the judgment in which the trial court ordered Jiles to pay Judith and Empty Eye, Inc. $173,334.56 for breach of contract.   Because this holding eliminates the breach-of-contract recovery that supported the trial court's award of attorney's fees, we additionally reverse that portion of the judgment.   And, because the trial court's award of prejudgment interest is based in part on the award of damages for breach of contract, we modify that portion of the judgment to specify that prejudgment interest is awarded on the total amount of damages of $171,601.21.[5]


/s/      Tracy Christopher
Justice


Panel consists of Chief Justice Hedges and Justices Frost and Christopher. (Justice Frost dissenting)

---

[5] The jury found that the Corporation was entitled to recover damages on both its breach-of-fiduciary-duty claim and its breach-of-contract claim.   The Corporation has not raised a cross-point to assert a right to recover for its breach-of-fiduciary-duty claim, nor was it required to request such relief before we reversed the judgment as to the breach-of-contract claim.   *See Boyce Iron Works, Inc. v. Sw. Bell Tele. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).   The Corporation therefore is not foreclosed from raising this issue in a timely motion for rehearing.