Kevin Jewell, Justice, dissenting.
In a thorough opinion, the court today overrules Critical Path's legal sufficiency challenges to the jury's proximate cause finding. Regrettably, I cannot join the opinion or judgment because I agree with Critical Path that events occurring subsequent to its negligence destroyed any causal connection between Critical Path's negligent conduct and the accident. Accordingly, the proximate cause element is unsupported by legally sufficient evidence, which compels the court to reverse the judgment. Because the majority does not do so, I respectfully dissent.
Issue Presented
One of several issues Critical Path raises involves the legal sufficiency of the evidence to support the jury's finding that Critical Path's negligence proximately caused the accident and appellees' damages. Before reaching proximate cause, the majority first concludes that Critical Path breached a duty to place the isolation and decontamination tasks on the master schedule. I do not address this conclusion but assume its support in the record.[1] See Taylor v. Carley , 158 S.W.3d 1, 8 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (reviewing court may assume existence of a duty and resolve appeal on proximate cause). To me, the causation question is dispositive.
In support of its legal sufficiency challenge, Critical Path argues that its negligence in failing to schedule the isolation and decontamination tasks was too remote or attenuated in the chain of events to have been a substantial factor in bringing about the accident. According to Critical Path, its conduct did no more than create a condition that made the accident possible due to the negligent and unforeseeable subsequent acts of Valero and other contractors. Further, Critical Path contends that certain negligent acts of Valero and others "destroyed any causal connection between the actions of Critical Path and Mike Rivers and the accident, as a matter of law." Critical Path raised these arguments as part of a no-evidence challenge in a motion for judgment notwithstanding the verdict and in a motion for new trial, so the issue is preserved. See T.O. Stanley Boot Co. v. Bank of El Paso , 847 S.W.2d 218, 220-21 (Tex. 1992) ; Daniels v. Empty Eye, Inc. , 368 S.W.3d 743, 748-49 (Tex. App.-Houston [14th Dist.] 2012, pet. denied).
Standard of Review
Evidence is legally insufficient to support a jury finding when (1) the record *580 discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. Bustamante v. Ponte , 529 S.W.3d 447, 455 (Tex. 2017) ; City of Keller v. Wilson , 168 S.W.3d 802, 810 (Tex. 2005). "In determining whether there is no evidence of probative force to support a jury's finding, all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered," Bustamante , 529 S.W.3d at 456, including evidence offered by the opposing party that supports the verdict, see City of Keller , 168 S.W.3d at 827. Courts "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." City of Keller , 168 S.W.3d at 827. "[E]very reasonable inference deducible from the evidence is to be indulged in that party's favor." Merrell Dow Pharm., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997). The "final test" for legal sufficiency is always whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. City of Keller , 168 S.W.3d at 827.
Applicable Law
A. Proximate cause generally
To recover on a negligence claim, one must prove that a party's breach of duty proximately caused the damages at issue. IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason , 143 S.W.3d 794, 798 (Tex. 2004). Breach of a duty proximately causes an injury if the breach is a cause in fact of the harm and the injury was foreseeable. Stanfield v. Neubaum , 494 S.W.3d 90, 97 (Tex. 2016). Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, without which the harm would not have occurred. Id. ; Union Pump Co. v. Allbritton , 898 S.W.2d 773, 775 (Tex. 1995), abrogated on other grounds by Ford Motor Co. v. Ledesma , 242 S.W.3d 32 (Tex. 2007) ; Lear Siegler, Inc. v. Perez , 819 S.W.2d 470, 472 (Tex. 1991) (quoting Restatement (Second) of Torts § 431 cmt. a (1965)). A claimant must prove these elements by more than conjecture, guess, or speculation. Stanfield , 494 S.W.3d at 97 ; IHS Cedars Treatment Ctr. , 143 S.W.3d at 798-99 ; Doe v. Boys Clubs of Greater Dallas, Inc. , 907 S.W.2d 472, 477 (Tex. 1995).
Further delineating the meaning and contours of cause in fact, the Supreme Court of Texas has often stated that cause in fact is not established when the defendant's negligence does no more than furnish a condition that makes the injuries possible. E.g. , IHS Cedars Treatment Ctr. , 143 S.W.3d at 799 ; Union Pump , 898 S.W.2d at 776 ; Boys Clubs , 907 S.W.2d at 477 ; Lear Siegler , 819 S.W.2d at 472 ; Bell v. Campbell , 434 S.W.2d 117, 120 (Tex. 1968). "The evidence must go further, and show that such negligence was the proximate, and not the remote cause of the resulting injuries ... [and] justify the conclusion that such injury was the natural probable result thereof." Carey v. Pure Distrib. Corp. , 133 Tex. 31, 124 S.W.2d 847, 849 (1939) ; see also Ambrosio v. Carter's Shooting Ctr., Inc. , 20 S.W.3d 262, 266 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). In certain circumstances, therefore, the defendant's conduct may be too attenuated from the resulting injuries to be a substantial factor in bringing about the harm. Boys Clubs , 907 S.W.2d at 477 ; Union Pump , 898 S.W.2d at 776 ; Lear Siegler , 819 S.W.2d at 472. The Supreme Court of Texas has characterized the vital distinction as whether the negligent act set *581 in motion a natural and unbroken chain of events that led directly to the injury or merely furnished a condition that made it possible for the injury to instead result from a separate act of negligence. IHS Cedars Treatment Ctr. , 143 S.W.3d at 799. If the same harm would have resulted had the defendant not been negligent, the defendant's conduct could not have been a substantial factor in causing the harm. Donaldson v. J.D. Transp. Co. , No. 04-04-00607-CV, 2005 WL 1458230, at *3 (Tex. App.-San Antonio June 22, 2005, no pet.) (mem. op.); Restatement (Second) of Torts § 432(1) cmt. b (1965).
Identifying the circumstances when legal causation may exist and when, as a matter of law, it cannot is predictably challenging and inevitably necessitates "weighing of policy considerations." City of Gladewater v. Pike , 727 S.W.2d 514, 518 (Tex. 1987). Efforts to draw the line have "generated a considerable body of law." Union Pump , 898 S.W.2d at 775. While the issue of proximate cause is generally a question of fact, some causes in fact do not constitute legal causation as a matter of law. See Phan Son Van v. Pena , 990 S.W.2d 751, 755 (Tex. 1999) ; Union Pump , 898 S.W.2d at 775-76 ; Bell , 434 S.W.2d at 122 ; Ambrosio , 20 S.W.3d at 266. Proximate cause can be a question of law when the evidence is without material dispute and where only one reasonable inference may be drawn. Ambrosio , 20 S.W.3d at 266 ; see Rodriguez v. Moerbe , 963 S.W.2d 808, 811 (Tex. App.-San Antonio 1998, pet. denied).
B. Superseding cause
The doctrine of superseding cause, also known as new and independent cause, plays an important role in the proximate cause inquiry. Although an injury can have multiple proximate causes, a superseding (or new and independent) cause may " 'intervene [ ] between the original wrong and the final injury such that the injury is attributed to the new cause rather than the first and more remote cause.' " Stanfield , 494 S.W.3d at 97 (quoting Dew v. Crown Derrick Erectors, Inc. , 208 S.W.3d 448, 450 (Tex. 2006) (plurality op.)). A superseding cause thus "destroys any causal connection between the defendant's negligence and the plaintiff's harm." Id. ; see also Columbia Rio Grande Healthcare, L.P. v. Hawley , 284 S.W.3d 851, 856 (Tex. 2009) (explaining how a superseding cause "destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question"); Dew , 208 S.W.3d at 450. A superseding cause is distinguished from a concurring cause, which merely " 'concurs with the continuing and co-operating original negligence in working the injury,' " leaving the causal connection between the defendant's negligence and the plaintiff's harm intact. See Stanfield , 494 S.W.3d at 98 (quoting Dew , 208 S.W.3d at 458 ). As the Supreme Court of Texas has explained,
the crucial distinction between a superseding cause and a concurring cause is the intervening cause's effect on the chain of causation. In evaluating the existence of a superseding cause, "[t]he question always is, was there an unbroken connection? Would the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?"
Id. (quoting Tex. & Pac. Ry. Co. v. Bigham , 90 Tex. 223, 38 S.W. 162, 164 (1896) ).
Superseding cause is not an affirmative defense; it is an element to be considered in determining the existence or non-existence of proximate cause. Dallas Ry. & Terminal Co. v. Bailey , 151 Tex. 359, 250 S.W.2d 379, 383-84 (1952) ;
*582 Arguelles v. Kellogg Brown & Root, Inc. , 222 S.W.3d 714, 727 (Tex. App.-Houston [14th Dist.] 2007, no pet.) ; Taylor , 158 S.W.3d at 9. When an intervening force is sufficient to become a superseding cause and destroy the causal connection between the defendant's negligent conduct and the plaintiff's injury, the plaintiff cannot establish the proximate cause element. Stanfield , 494 S.W.3d at 97, 102 ; Arguelles , 222 S.W.3d at 727 ; Benitz v. Gould Grp. , 27 S.W.3d 109, 116-17 (Tex. App.-San Antonio 2000, no pet.) ; Coleman v. Equitable Real Estate Inv. Mgmt., Inc. , 971 S.W.2d 611, 616-18 (Tex. App.-Dallas 1998, no pet.) ; Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc. , 778 S.W.2d 492, 496-97 (Tex. App.-Dallas 1989, writ denied) ; Wolf v. Friedman Steel Sales, Inc. , 717 S.W.2d 669, 673-74 (Tex. App.-Texarkana 1986, writ ref'd n.r.e.). Thus, it is proper to consider the issue as part of a legal sufficiency review of the proximate cause element, as Critical Path has argued.
In determining whether an intervening force rises to the level of a superseding cause, Texas courts have considered instructive the following factors from the Restatement:
(1) whether the intervening force brings about harm different in kind from that which otherwise would have resulted from the actor's negligence;
(2) whether the intervening force's operation or its consequences appear after the event to be extraordinary, rather than normal, in view of the circumstances existing at the time of the force's operation;
(3) whether the intervening force is operating independently of any situation created by the actor's negligence or is not a normal result of such a situation;
(4) whether the operation of the intervening force is due to a third person's act or to his failure to act;
(5) whether the intervening force is due to an act of a third person that is wrongful toward the other and thus subjects the third person to liability to him; and
(6) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.
See Stanfield , 494 S.W.3d at 98-99 ; Phan Son Van , 990 S.W.2d at 754 ; Arguelles , 222 S.W.3d at 730 ; Restatement (Second) of Torts § 442 (1965).
Supreme Court of Texas precedent does not indicate that any one factor is determinative, although the "often controlling" inquiry when distinguishing between a superseding and a concurring cause is whether the intervening cause or its probable consequences were such as could reasonably have been anticipated by the original wrongdoer. See Dew , 208 S.W.3d at 452 (quoting Bell , 434 S.W.2d at 120 ). An intervening cause can destroy the causal connection between the original negligence and the harm even if the original negligence is the "but for" cause of the intervening cause. Stanfield , 494 S.W.3d at 99 ; see Bell , 434 S.W.2d at 120-22. Some courts, including ours, have held that intervening forces were superseding causes as a matter of law based on evidence of less than all six Restatement factors. For example, in Arguelles , this Court affirmed a summary judgment when the evidence established five of the six factors. Arguelles , 222 S.W.3d at 730. Similarly, in Wolf , the Texarkana Court of Appeals affirmed judgment notwithstanding the verdict based on less than all six superseding cause factors. Wolf , 717 S.W.2d at 673.
An intervening force may constitute a superseding cause-thereby destroying the causal connection between a defendant's negligence and a plaintiff's injuries-even if the defendant's negligence was a substantial factor in bringing about *583 the harm. Restatement (Second) of Torts § 440 (1965) ;[2] see also Noblin v. EE Ranches, Inc. , 296 S.W.3d 773, 777 (Tex. App.-El Paso 2009, no pet.). When a superseding cause destroys the causal connection between the actor's negligence and the accident or injury, an appellate court should sustain a legal sufficiency challenge to the proximate cause finding. See Aerospatiale Helicopter Corp. , 778 S.W.2d at 496-97.
The majority says that a new trial is the greatest relief available to Critical Path based on its briefing of the superseding cause issue. I cannot accept that premise. In its opening brief, Critical Path argued that the evidence established that the negligent or wrongful conduct of Valero and other contractors destroyed any causal connection between the actions of Critical Path and the accident as a matter of law. Critical Path's phrasing-which plainly states the effect of superseding cause under Texas law-permits but one reasonable construction: the conduct of Valero and others superseded Critical Path's negligence as a matter of law. See Stanfield , 494 S.W.3d at 97 (superseding cause "destroys any causal connection between the defendant's negligence and the plaintiff's harm."). If Critical Path is correct, the jury's proximate cause finding lacks legally sufficient evidentiary support. See id. at 97, 102 ; Arguelles , 222 S.W.3d at 727 ; Benitz , 27 S.W.3d at 116-17 ; Coleman , 971 S.W.2d at 616-18 ; Aerospatiale Helicopter Corp. , 778 S.W.2d at 496-97 ; Wolf , 717 S.W.2d at 673-74. Critical Path raised this argument in its post-trial motion for judgment notwithstanding the verdict and motion for new trial, both of which are permissible vehicles to preserve a legal sufficiency complaint. See Garden Ridge, L.P. v. Clear Lake Ctr., L.P. , 504 S.W.3d 428, 445 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (noting that legal sufficiency challenge may be preserved in a case tried to a jury by a motion for judgment notwithstanding the verdict or motion for new trial); Daniels , 368 S.W.3d at 748-49. Whether or not Critical Path received the superseding cause instruction it requested does not preclude it from contending in a post-trial motion, and later on appeal, that the jury's finding is unsupported by legally sufficient evidence for the reasons advanced in its motion. Because it made such a challenge in the trial court, and repeats it in our court, I address it. To hold otherwise ignores an argument plainly articulated and within the scope of the issues presented in Critical Path's brief. See Tex. R. App. P. 38.1(f), (i).
Analysis
In my view, the Court should sustain Critical Path's legal sufficiency challenge to the proximate cause finding because undisputed events occurring subsequent to Critical Path's negligence destroyed any causal connection between Critical Path's negligent conduct and the accident. This is so regardless whether Critical Path's negligent conduct was a substantial factor in causing the harm, as the Court concludes. See Restatement (Second) of Torts § 440 (1965).
Appellees argue, and the Court holds, that Critical Path breached its duty to place the isolation and decontamination tasks on the master schedule in November 2011. Critical Path argues that subsequent negligent conduct by Valero, JVIC, and others destroyed any causal connection between Critical Path's negligence and the *584 March 6, 2012 accident. In particular, Critical Path contends that Valero and JVIC failed to follow Valero's line opening, vessel draining, and flare work procedures during the planning and execution of the work. According to Critical Path, the breakdown in these procedures included (1) Valero's modifications to its plan for conducting the isolation and decontamination tasks in response to the leaking valve problem, and (2) Valero's execution of the plan, including Valero's decision to forego bunker gear, to introduce air into the line before ensuring it was isolated and purged of flammable material, and to leave the flare pilots in service during the work. Additionally, Critical Path points to (1) Valero's decision to place Ronnie Rainer in charge of the isolation and decontamination tasks when he was not qualified to oversee these tasks; (2) the failures of Valero and JVIC to stop work when smoke and flames began emitting from the flare stack; and (3) Certified Safety's failure to question the inconsistencies between the work permit information and Valero's comments at the joint safety analysis ("JSA") meeting. The permit notes the presence of flammable material in the line and that the line had not been cleared, but Valero and others on site treated the line as though it had been cleared of flammable material.
I agree with Critical Path's summary of intervening events and would hold that the negligent conduct by Valero and JVIC destroyed any causal connection between Critical Path's negligence and the accident. The most vital facts omitted from appellees' brief and the majority opinion relate to Valero's knowledge that the line was required to be, but had not been, isolated and decontaminated before proceeding with the project. As far as I can tell, every witness who discussed the issue of Valero's knowledge agreed that Valero was aware of the need to perform the isolation and decontamination tasks before proceeding with the south flare work. At least one witness, Lawrence Loomis, testified that the subject was discussed between or among Valero employees weeks before the accident. Valero employees (Brian Crutcher, Rainer, Loomis, Harry Eubank, and Steven Buggs) as well as JVIC employees (Jeffrey Byrnes, Darren Duvall, and Joseph Matte) knew the line needed to be decontaminated of flammables. Rainer knew, having been so informed by his supervisor Crutcher in late January or early February 2012, that the scope of work would include decontamination. Byrnes told Rainer how the steaming would occur, which sections would be cleaned, and where they would connect the steamers. John Brewer, who prepared Valero's internal post-accident investigation report, acknowledged that Valero knew as far back as November 2011 that the work needed to be done. Valero's knowledge was also confirmed by appellees' expert, Peter Howell. Appellees' exhibit 245 showed, and Howell confirmed, that at least Valero knew that the isolation task needed to be performed because time was allotted to develop the plans. Hodges, Valero's lead planner, did not know why it took so long to have a plan for the isolation and decontamination work because it was known months before the accident that the work was necessary.
Valero also knew the line had not been decontaminated when it was opened. Rainer testified that, on March 5, Valero was concerned about the safety of altering Rainer's March 4 plan when the line had not been cleaned of flammable material. Valero knew at that time the line had not been decontaminated but proceeded anyway-recklessly in my view. As Crutcher testified, Valero should have independently verified that the line had been cleaned and was either blinded or disconnected. Appellees' expert acknowledged that if the valve does not successfully isolate the line, the *585 work should stop. Valero did not follow its procedure to isolate the line. Further, Eubank testified that Valero was supposed to ensure the use of bunker gear on a live line, but failed to do so. (A leaking line is considered a "live" line). Rainer recommended using bunker gear, but this recommendation was rejected. Eubank also recommended steaming the line to clear it of hydrocarbons, but Valero rejected his recommendation. Loomis asked Rainer if the flare "was dead," and if the gas and steam were "blocked in," and Rainer told him "yes."
The evidence establishing that Valero and JVIC were aware that the isolation and decontamination tasks were necessary but not successfully completed is, in my view, undisputed and conclusive.[3] Reasonable jurors could reach only one factual conclusion from the evidence on that issue. See City of Keller , 168 S.W.3d at 814-15. Evidence is conclusive when, for example, a party admits the fact is true, such as Valero admitting these facts. Id. at 815. Valero's and JVIC's knowledge of the hazard and decision to proceed in spite of that knowledge underscores the independence of the decisions they made in relation to Critical Path's negligence. OSHA cited Valero for nineteen safety violations following the accident. On this record, I am not persuaded that Critical Path's placement of the isolation and decontamination tasks on the master schedule would have provided Valero or JVIC information they did not already possess. See Arguelles , 222 S.W.3d at 728. There is no evidence to the contrary.
Moreover, no witness testified as to how the decisions at issue made by Valero, JVIC, and others were or should have been reasonably anticipated by Critical Path. See Dew , 208 S.W.3d at 452 ; see also Restatement (Second) of Torts § 447 (1965) ("The fact that an intervening act of a third person is negligent in itself ... does not make it a superseding cause ... if the actor at the time of his negligent conduct should have realized that a third person might so act."). I do not believe the evidence reasonably supports a contrary inference. For example, it was undisputed that the reason Valero altered its March 4 plan was because of the leaking valve. By all indications in the record, the valve would have leaked regardless whether, or when, Critical Path included the isolation and decontamination tasks on the master schedule. No one testified that Critical Path knew about or should have anticipated the valve problem. Further, I see no evidence that Critical Path should have foreseen that Valero's response to the leaking valve would violate Valero's own safety protocols so egregiously.[4] No one testified that the March 4 plan was changed or failed to contemplate decontamination because of a lack of scheduling. There was no evidence that Valero would have dealt with the valve issue differently, and actually performed the isolation and decontamination tasks in compliance with its safety procedures, had it attempted to begin the isolation and decontamination tasks sooner than it did. Further, no witness established that the isolation and decontamination tasks in fact would have been performed had Critical Path placed them on the master schedule in November *586 2011, or when they would have been performed, or that the scheduling of those tasks by November 2011 would have resulted in their performance any earlier than March 2012.[5] Although Howell explained what was done to decontaminate the line after the accident, neither he nor anyone else said that the decontamination procedure used after the accident would have been the same procedure used had Critical Path placed the planning of the task on the master schedule in November 2011, or whether the isolation and decontamination procedure would have begun before March 4, 2012.
In Aerospatiale Helicopter , a pilot's awareness of the danger resulting from the original actor's negligence and the pilot's unforeseeable decision to proceed in violation of procedures were held to be a superseding cause as a matter of law. Aerospatiale Helicopter , 778 S.W.2d at 496-97. As the court stated:
In applying the test of foreseeability to situations where a negligently created preexisting condition combines with a later act of negligence causing an injury[,] there is a distinction between a situation in which one has created a dangerous condition and a later actor observes, or by the circumstances should have observed, the existence of the dangerous condition and a situation in which the dangerous condition is not apparent and cannot be observed by the actor. In regard to the first situation, the intervening act interrupts the natural sequence of the events and cuts off the legal effect of the negligence of the initial actor. This is based upon the premise that it is not reasonable to foresee or expect that one who actually becomes cognizant of a dangerous condition in ample time to avert the injury will fail to do so.
Id. at 497 (quoting Wolf , 717 S.W.2d at 673 ). The court reversed a bench trial on legal sufficiency grounds. Id.
In my view, the present record presents a comparable instance of intervening conduct by Valero and JVIC. They knew decontamination was necessary regardless whether those tasks were scheduled. The valve problem arose, and Valero attempted an altered plan for isolation and decontamination, which was unsuccessful. Valero and JVIC proceeded with the work without ensuring those tasks were done in blatant disregard of safety procedures. We held similar conduct to constitute superseding causes as a matter of law in Arguelles. Arguelles , 222 S.W.3d at 728-730 ; see also Coleman v. Equitable Real Estate Inv. Mgmt., Inc. , 971 S.W.2d 611, 616-18 (Tex. App.-Dallas 1998, no pet.) (original actor not liable when subsequent actor deliberately violates policies and causes harm). The courts in Arguelles , Aerospatiale Helicopter , and Coleman concluded that a subsequent actor's policy violations were not foreseeable to the original actor and were of such character as to break the causal chain.
The conduct of Valero and JVIC cited by Critical Path was independent, extraordinary, and far from normal, given Valero's knowledge of the hazard and viewing the circumstances existing between November 2011 and the accident. When "nothing short of prophetic ken could have anticipated the happening of the combination *587 of events" by which the original negligence led to an intervening force that resulted in the plaintiff's injury, the harm is not reasonably foreseeable. Stanfield , 494 S.W.3d at 98 ; see also Bigham , 38 S.W. at 164.
The majority posits that Critical Path's negligence in failing to include the isolation and decontamination tasks on the master schedule in November 2011 gave rise to time pressure that caused Valero's plan to be defective. As appellees assert in their brief, "had Critical Path done the job they were hired to do, then the critical safety task would not have been left to the last minute, the plan would not have had dangerous flaws in it, and the explosion would not have happened." If this proposition is more than supposition I do not see it in the record. Appellees cite no evidence supporting the theory that Valero's many failures to follow its safety procedures occurred because the plan was developed "at the last minute" or because Critical Path did not include the tasks on the schedule in November 2011. Appellees' brief states that no one planned the tasks because Critical Path did not include them on the schedule, but the record cite given does not support the assertion.
Similarly, the majority's agreement with appellees' assertion that Critical Path's negligence initiated a continuous and unbroken causal chain leading to "rushed" work, a defective plan, and then to the accident, is in my view unsupported by legally sufficient evidence. There is no evidence that Critical Path's failure to include the isolation and decontamination tasks on the master schedule caused Valero's plan or performance to be "defective" or "flawed."
As to the majority's reliance on Valero's post-accident report as supporting the proximate cause finding against Critical Path, I respectfully disagree. The report constitutes no evidence against Critical Path because Critical Path's conduct was not evaluated as part of the report. The report's author, Brewer, did not even know Critical Path existed when he prepared the report. Therefore, it is no more than a scintilla of evidence of a sufficient causal connection between Critical Path's negligence and the accident. See City of Keller , 168 S.W.3d at 810.
Valero controlled whether, and when, the south flare project went forward. It deliberately chose not to stop and ensure safety even though it was independently aware that decontamination was required for safe completion of the project despite that task's omission from the master schedule. There is no more than a scintilla of evidence that the plan to perform those tasks, or the tasks themselves, were in fact rushed. The witnesses who were asked directly about the issue (Rainer, Hodges, Crutcher) rejected the suggestion that they were rushed regarding the isolation and decontamination tasks. One of the appellees, Blake Smith, said he felt pressure to "hurry, hurry, hurry," but he did not attribute the rush to a lack of scheduling or to Critical Path's conduct, as opposed to other sources.
In that regard, to the extent there exists more than a scintilla of evidence that the isolation and decontamination tasks were in fact "rushed," was that because Critical Path failed to schedule them or, rather, because Valero wanted to minimize the $2 million per day costs of the partial shutdown during the project? No witness suggested the former; more than one suggested the latter. Even if a jury could reasonably infer that the isolation and decontamination tasks were "hurriedly" planned, altered, or executed, there is no evidentiary basis to support the proposition that any sense of urgency was because Critical Path did not schedule the *588 tasks. Instead, the evidence supports the opposite inference that any effort to rush the job was driven by Valero's financial concerns. Even assuming Valero first became aware on March 4 that the decontamination task had not been done, there is no evidence that Valero's realization created a safety crisis (as opposed to a financial one) at that time. I do not believe that this record gives rise to a reasonable inference that Critical Path's negligence caused an urgency and led to a defective plan (or reckless execution) by Valero.[6]
Even if such an inference is reasonable, it is equally (if not more) reasonable to infer that any urgency was a product of Valero's cost concerns. Nothing more than meager circumstantial evidence supports the majority's assertion that Critical Path's negligence caused the plan and its execution to be defective. In that instance, we consider all the evidence and competing inferences, and the evidence does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether that vital fact exists. See ids="8943104" index="287" url="https://cite.case.law/sw3d/168/802/#p821">id. at 813-14. "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." Id. at 813. Accordingly, we may not infer that the reason any workers may have been rushed, assuming they were rushed, was because of Critical Path's failure to schedule the tasks.
More important, may we infer that any defects in the initial plan, the changed plan, or the execution of the changed plan were because the workers felt "rushed" or because the plan did not materialize until the "last minute"? No witness testified or suggested that Valero's initial or changed plans were faulty because of Critical Path's negligence in not scheduling tasks Valero always knew were required to be performed. Valero knew hydrocarbons must be cleared from the line before introducing air or installing a blind; Valero knew or should have known hydrocarbons had not been cleared before introducing air or attempting to install the blind; yet Valero proceeded anyway in an extraordinary violation of its procedures. I would conclude that any circumstantial evidence supporting the majority's principal theme of an urgency brought about by a scheduling failure, which led to a defective plan, is no more than a scintilla.[7] If it is true that Valero's plan was faulty because it was rushed, the reason for haste was proven to be Valero's financial pressure as opposed to Critical Path's lack of scheduling.
To support the supposed continuous link from Critical Path's negligence to the "last minute" plan, to the modified faulty plan, to the defective execution of the faulty plan, and then to the accident, the majority cites Rivers as understanding that mistakes such as failing to request plans and schedule tasks might not manifest themselves until work occurs in the field. Finding someone who disagrees with such a global proposition would be challenging indeed, but the notion is simply too general and non-probative to support a finding that Critical Path's negligence was a legal cause of the accident. See Stanfield , 494 S.W.3d at 100 (rejecting overly general *589 formulation of foreseeability in superseding cause analysis).
The majority is understandably critical of Rainer's lack of qualifications to oversee the work. I fail to see how this undisputed fact implicates Critical Path. No witness suggested that Valero's supervisory assignments would have been different had Critical Path timely scheduled the isolation and decontamination tasks. The decision to place Rainer in charge was Valero's, and there is no evidence that Critical Path should have foreseen Valero would staff the project with unqualified personnel. Regardless, Rainer's immediate supervisor, Crutcher, approved Rainer's March 4 plan, yet no one criticized Crutcher's qualifications. Assuming Rainer's plan was faulty, was it so because Critical Path did not schedule the isolation and decontamination tasks? Again, I see no evidence of this.
The remaining evidence the majority relies upon pertains to the duty and breach elements, not causation. Breach and causation cannot be conflated; an abundance of evidence of one cannot substitute a deficiency of evidence of the other. See id. at 102.
Ultimately, in my view, applying the standard of review to the present record reveals that: (1) the intervening forces discussed above were extraordinary, rather than normal, in view of the circumstances existing at the time the forces operated; (2) the intervening forces operated independently of any situation created by Critical Path's negligence; (3) the intervening forces were due to the wrongful actions or inactions of others that subjected them to liability toward appellees; and (4) the intervening forces were set in motion by those with a high degree of culpability. Thus, all but one of the Restatement factors support a holding that Critical Path was not the legal cause of the accident due to the operation of superseding causes. The only remaining factor is whether the intervening forces brought about harm different in kind from that which otherwise would have resulted from the actor's negligence. The harm brought about by Valero's and JVIC's wrongful conduct was the fire and resulting injuries. This is the same danger that might be expected if the failure to schedule the isolation and decontamination tasks in fact caused flammable materials to remain in the line. This factor weighs in appellees' favor but it is not by itself determinative. See Dew , 208 S.W.3d at 451-52 (superseding cause "ordinarily," but not always, involves injury different from that which might have been expected); Arguelles , 222 S.W.3d at 730 (affirming summary judgment notwithstanding "risk" factor when other five factors supported superseding cause).
Therefore, this court should sustain Critical Path's legal sufficiency challenge to the proximate cause finding. See Arguelles , 222 S.W.3d at 730 ; Coleman , 971 S.W.2d at 616-18 (original actor not liable when subsequent actor deliberately violates policies and causes harm); Aerospatiale Helicopter , 778 S.W.2d at 496-97 (while effects of the original negligence persisted, pilot, who was aware of those effects, disregarded procedures causing the harm; pilot's conduct was superseding cause as matter of law; sustaining legal sufficiency challenge); Wolf , 717 S.W.2d at 673 ; see also Sw. Bell Tel. Co. v. Hardy , 131 Tex. 573, 117 S.W.2d 418 (1938) (another party's independent act of moving a telephone wire that defendant telephone company delayed in removing was new and independent cause of subsequent accident); Noblin , 296 S.W.3d at 777-78.
For these reasons, I respectfully dissent. I would reverse the judgment and render judgment for Critical Path.

In their brief, appellees assert that Critical Path was negligent when it failed to schedule the isolation and decontamination tasks. I therefore constrain my analysis (as do appellees) to whether Critical Path's negligence in failing to schedule the isolation and decontamination tasks proximately caused the accident and injuries. See Ward v. Lamar Univ. , 484 S.W.3d 440, 453 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (the parties "frame the issues for decision", as they "know far better than the courts what is best for them, so they are responsible for advancing the facts and arguments entitling them to relief"); see also Townsend v. State Farm Lloyds , No. 01-97-01390-CV, 1998 WL 724016, at *3 (Tex. App.-Houston [1st Dist.] Oct. 15, 1998, no pet.) (not designated for publication) (considering only those breaches alleged by party asserting breach of contract).

Section 440 defines "superseding cause" to mean "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

This is true as to Valero and JVIC, but may also be true as to Taylor Technical, Certified Safety, and UP Professional.

We rejected a similar contention in Arguelles , where the plaintiffs argued that Kellogg, Brown & Root should have foreseen that Phillips would "respond improperly" to the danger there at issue. Arguelles , 222 S.W.3d at 728. No evidence supported that argument in Arguelles ; appellees do not even advance the argument here.

According to the majority, "[h]ad Rivers followed Valero's instructions and used the information he obtained to schedule the necessary tasks, the record here-unlike in Arguelles -does not indicate that Valero would have ignored those tasks." (Ante at 560). But this proposition reverses the burden of proof. No one testified in support of the majority's statement, which contradicts the evidence showing that Valero did not perform critical work knowing it needed to be performed, in violation of its procedures.

Howell, appellees' expert, blamed UP Professionals for the faulty plan; he did not testify that Critical Path's negligence contributed to the faulty plan.

The majority discusses the connection between Critical Path and the accident in the context of its analysis and ultimate holding that Critical Path's negligence was a substantial factor in causing the accident. See Restatement (Second) of Torts § 433(b) (1965). I discuss the issue as part of a superseding cause analysis, regardless whether Critical Path's negligence was a substantial factor. See Restatement (Second) of Torts § 440 (1965). Either way, in my view, the majority's suggested continuous link between Critical Path's negligence, the defective plans, and the accident does not exist.